566 A.2d 1113

**MALLINCKRODT, INC., et al.**

v.

**WHITTAKER M.A. BIOPRODUCTS, INC., et al.**

**No. 511, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Dec. 7, 1989.

James T. Wharton and D. Lee Rutland (Wharton, Levin & Ehrmantraut, on the brief), Annapolis, for appellants.

Rand D. Weinberg (Weinberg & Weinberg, on the brief), Frederick, and Michael A. Kahn (Gallop, Johnson & Neuman, on the brief), St. Louis, Mo., for appellees.

Submitted before FISCHER and CATHELL, JJ., and EDWARD O. WEANT, Jr. (Retired, specially assigned), J.

CATHELL, Judge.

The Circuit Court for Frederick County (Smith, J.) granted summary judgment on one count of a three-count complaint, and directed entry of final judgment on that count pursuant to Maryland Rule 2–602(b). Three questions are presented on appeal from that judgment:

1. Did the trial court improperly certify as a final judgment its grant of appellees' Motion for Summary Judgment when denial of the Motion for Certification would not have caused appellees to suffer a harsh result?

2. Did the trial court err in concluding that Maryland law governs the distributorship agreement entered into between appellants and appellees?

3. Did the trial court err in concluding that no dispute of material fact existed and that the distributorship agreement entered into between appellants and appellees was terminable at will?

## The Facts

Appellant Mallinckrodt Caribe, Inc. (Caribe) is a wholly owned subsidiary of appellant Mallinckrodt, Inc. (Mallinckrodt). Both are Delaware corporations. Caribe acts primarily as a distributor for Mallinckrodt's product lines in Puerto Rico. Mallinckrodt's principal place of business is in Missouri and Caribe's principal place of business is in Puerto Rico.

Appellee, Whittaker M.A. Bioproducts, Inc. (Bioproducts), is a Maryland corporation located in Walkersville, Maryland. It manufactures a product called LAL (Limulus Amebocyte Lysate), which is used by pharmaceutical companies to test drugs for the presence of certain toxic substances. Bioproducts is a wholly owned subsidiary of appellee Whittaker Corporation (Whittaker), which is a Dela-

ware corporation with its principal place of business in California.

In June 1985, Whittaker purchased Mallinckrodt's LAL product line pursuant to an Asset Purchase Agreement. Prior to that time, Mallinckrodt had distributed LAL products overseas through its wholly owned subsidiaries located in Australia, Japan, Brazil, Mexico, Spain, Great Britain, West Germany and Puerto Rico. During negotiation of the Asset Purchase Agreement, the parties discussed continued use of these Mallinckrodt subsidiaries by Bioproducts. They reached a tentative understanding, set forth in section 6.5 of the Asset Purchase Agreement:

> [Whittaker] and [Mallinckrodt] will use their best efforts to enter into an agreement, to be effective within 30 days after consummation of the Closing [of the Asset Purchase Agreement], substantially in the form of Exhibit 6.5 attached hereto, (the "Distribution Agreement"), relating to the use by [Whittaker] after the Closing of [Mallinckrodt's] direct sales network to customers of the Business located outside the United States.

A proposed distribution agreement was attached as Exhibit 6.5 to the Asset Purchase Agreement. The proposed distribution agreement is a fill-in-the-blanks standard form suitable for use by Bioproducts and any of its distributors. It consists of thirty-five numbered paragraphs and six attached exhibits. Many of its provisions (such as term, territory, minimum purchases, discounts, etc.) are incomplete, for obvious reasons. The provision concerning "Governing Law," however, is complete; it states:

> The rights and duties of the parties to this [Distribution] Agreement shall be governed in all respects by the substantive law to [sic] the State of Maryland, U.S.A.

During the discussions over the distribution agreement, Mallinckrodt prepared and submitted to Whittaker a counter-proposal. It differs in several respects from the original proposal; significantly, the choice-of-law clause was changed to California. The parties were apparently unable

to agree to most of the provisions contained in either proposal. Consequently, no written distribution agreement was executed.

The parties were able to agree, however, to some provisions, but the distribution agreements between Bioproducts and the various Mallinckrodt subsidiaries (including Caribe) were oral, not written. The parties agree that these oral distribution agreements were formed during negotiations in June 1985 at the headquarters of Mallinckrodt in St. Louis, Missouri. A written memorandum of the oral distribution agreement between Bioproducts and Caribe was embodied in a letter dated July 23, 1985, from a representative of Bioproducts in Walkersville, Maryland, to a Mallinckrodt representative in St. Louis, Missouri. The letter implicitly acknowledges the existence of the distributor relationship, and explicitly mentions the prices for certain products and specifies that "Shipments are FOB, Walkersville, MD."

Pursuant to oral agreement, Caribe ordered LAL products from Bioproducts, and Bioproducts filled those orders, until 1987. By letter dated February 16, 1987, Bioproducts terminated the distributorship relationship with Caribe, effective April 1, 1987. After April 1, 1987, Bioproducts honored Caribe purchase orders only for products that Caribe represented as having been ordered by customers prior to the notice of termination. Bioproducts has sold nothing to Caribe since June 1987. Bioproducts continues to sell LAL products to Mallinckrodt subsidiaries in Australia, Japan, Brazil, Mexico, Spain, Great Britain, and West Germany, pursuant to oral distribution agreements.

As of June, 1987, Caribe owed Bioproducts approximately $30,000 for goods sold to Caribe during the first part of 1987 pursuant to eleven separate invoices. During the fall of 1987, Mallinckrodt notified Bioproducts that its termination of the distribution relationship with Caribe violated Puerto Rico's Dealer's Act, and threatened to sue under the Act if Bioproducts did not pay at least $250,000.

On November 5, 1987, Whittaker and Bioproducts filed suit against Mallinckrodt and Caribe in the Circuit Court for Frederick County. Count I of the Complaint seeks payment for goods sold and delivered. Count III alleges that Caribe ordered the goods intending not to pay for them; in this count it seeks punitive damages. Count II asserts a separate and distinct claim for a declaratory judgment that the distribution relationship between Bioproducts and Caribe was terminable at will by either party.

In February 1988, Mallinckrodt and Caribe offered to settle Counts I and III for $30,021.24, and tendered a check in that amount. Whittaker and Bioproducts responded by proposing a comprehensive settlement of all three counts. At the request of all parties, the court postponed a March 1 hearing on pending motions to permit the parties to pursue settlement.

On March 25, 1988, the appellees sent a comprehensive settlement proposal to the appellants' in-house counsel in St. Louis. Three weeks later, the appellees received a summons and complaint from El Tribunal Superior de Puerto Rico, where Caribe had sued Bioproducts on April 4, 1988. That suit seeks damages for breach of the same oral distribution agreement that is the subject of Count II of the Maryland suit.

On September 27, 1988, the trial court granted Bioproducts' motion for summary judgment on Count II of the complaint and entered a judgment declaring that the oral distribution agreement was governed by Maryland law and that, under Maryland law, the agreement was terminable at will. By then, Bioproducts had removed the Puerto Rican suit to the U.S. District Court for the District of Puerto Rico and had filed a motion to dismiss on the ground that the same issue was being litigated in the earlier-filed Maryland action.

On October 20, 1988, Bioproducts filed a motion for an order directing the entry of a final judgment on Count II, on the ground that there was no just reason to delay the *res*

*judicata* effect of a final judgment on that count. On February 1, 1989, the court granted the motion for that express reason.

## I

■ The appellants contend that the trial court erred by directing the entry of a final judgment on Count II pursuant to Maryland Rule 2–602(b). This rule was enacted to prevent piecemeal appeals. Appellants do not allege any circumstances that would indicate a piecemeal appeal. The appellants do not contend, for example, that the summary judgment on Count II fails to dispose of an entire claim, that it is merely an alternative theory for recovery based on the same facts as the unresolved counts, that the resolution of the remaining counts could moot the issues on appeal, or that the same issues would be presented on appeal from the remaining counts. *See Canterbury Riding Condominium v. Chesapeake Investors, Inc.*, 66 Md.App. 635, 505 A.2d 858 (1986), and *Allstate Insurance Company v. Angeletti*, 71 Md.App. 210, 524 A.2d 798 (1987). The appellants contend, instead, that the trial court abused its discretion by certifying the final judgment for the propose of giving it a *res judicata* effect in a foreign jurisdiction.

The trial court did not abuse its discretion in directing entry of a final judgment on Count II. Since Rule 2–602 is modeled after Rule 54(b) of the Federal Rules of Civil Procedure, interpretations of its federal counterpart have been deemed "especially persuasive as to the meaning of the Maryland rule." *Diener Enterprises, Inc. v. Miller*, 266 Md. 551, 554, 295 A.2d 470 (1972). At least two federal circuits have held that certification of a final judgment to produce *res judicata* effects in another forum is proper and promotes judicial economy. *Continental Airlines v. Goodyear Tire and Rubber Co.*, 819 F.2d 1519 (9th Cir.1987); *Shamley v. ITT Corp.*, 869 F.2d 167 (2d Cir.1989). We agree.

## II

The appellants next contend that the court erred in concluding that the validity and construction of the distribution agreement is governed by Maryland law. They claim that Puerto Rico law should apply. We disagree.

 In deciding questions of the validity and construction of a contract, we apply the principle of *lex loci contractus,* under which we look to the law of the jurisdiction where the contract was made. *Kramer v. Bally's Park Place,* 311 Md. 387, 390, 535 A.2d 466 (1988). The parties agree that the distribution agreement was oral, not written, and that the oral agreement was reached in St. Louis, Missouri. It would seem to follow that Missouri law should apply. The appellants point out, correctly, however, that a contract is considered to be made at the place where the last act necessary to complete the contract was performed. *Grain Dealers Mutual Insurance Co. v. Van Buskirk,* 241 Md. 58, 65–66, 215 A.2d 467 (1965). The appellants claim that the forwarding of purchase orders from Puerto Rico constituted the last act necessary to complete the distribution contract. We disagree.

The purchase orders forwarded pursuant to the distribution agreement were separate and distinct from the contract that formed the distributor relationship itself. To the extent that the oral agreement reached in St. Louis was not itself sufficient to complete the contract, the written memorandum of that agreement, sent from Maryland to Missouri, was sufficient. In short, the distribution agreement was complete before any purchase order was submitted. It follows that the distribution agreement was made in either Missouri or Maryland. Since there is no conflict of laws between Missouri and Maryland on the issue presented in this case, there is no need for a choice of law between the two. The court did not err in applying Maryland law.

## III

 The appellants finally contend that the court erred in granting summary judgment. They claim that a dispute

of material fact precluded the entry of a summary judgment. When the appellees moved for summary judgment, they filed affidavits to show that the agreement was oral and that there was no agreement as to the duration of the distributor relationship formed by the oral agreement. The appellants did not dispute that the agreement was oral. They filed an affidavit by their representative who negotiated the agreement which stated, "[I]t was my understanding that the agreement was for a minimum of three years, but was contemplated to be of a much longer duration." The appellants claim that this statement shows a dispute of material fact.

We disagree. The unilateral "understanding" of one party to a contract is not a material fact. The appellants' affidavit did not assert that the parties had agreed to a specified term. It follows that the trial court did not err in concluding that there was no dispute of a material fact and that summary judgment was appropriate.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.