7 F.3d 224
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
JIFFY LUBE INTERNATIONAL, INCORPORATED, Plaintiff-Appellee,
v.
Harold MORGAN; Edmund H. Shea, Jr., Defendants-Appellants.
 No. 92-1249.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 5, 1993.
Decided: September 21, 1993.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, District Judge. (CA-90-2604-HAR)
 Michael A. Vatis, Mayer, Brown & Platt, Washington, D.C., for Appellant.
 Harry Martin Rifkin, Semmes, Bowen & Semmes, Baltimore, Maryland, for Appellee.
 Roy T. Englert, Jr., Mayer, Brown & Platt, Washington, D.C., for Appellant.
 Franklin T. Caudill, SEMMES, Bowen & Semmes, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED AND REMANDED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Harold Morgan and Edmund H. Shea, Jr., joint makers of a promissory note to Jiffy Lube International, Inc. (Jiffy Lube) appeal the grant of summary judgment to Jiffy Lube in its diversity action to recover the balance due on the defaulted note. We affirm as to liability, remand with instructions for redetermination of damages.
 
 
 2
 * In October of 1986, representatives of Jiffy Lube International, Inc., a Nevada corporation with its principal place of business in Maryland, approached Morgan, a California resident, about the prospect of establishing Jiffy Lube service centers in various countries in the South Pacific. Over the next five months, Jiffy Lube and Morgan conducted telephone and mail negotiations between Baltimore and San Francisco, California. Their negotiations culminated in the execution of a Master License Agreement on March 30, 1987, under which Morgan Equipment Co. (MECO), a company wholly owned by Morgan, was granted the right to develop Jiffy Lube franchises in Australia, New Zealand, and other South Pacific countries in exchange for a fee of $480,000. MECO was also granted the right to sell franchises to third parties ("subfranchisees") in the same territory. During the course of the negotiations, Morgan had asked Shea, a business associate also residing in California, to join the South Pacific Jiffy Lube venture. As part of the franchise agreement, Morgan and Shea signed a promissory note ("the first note") in which they promised to pay Jiffy Lube $405,000 of the franchise purchase price in installments over the next two and a half years. Morgan and Shea signed the note in California and mailed it to Jiffy Lube's office in Baltimore, Maryland with the Master License Agreement. The remaining $75,000 of the franchise purchase price was paid by Morgan and MECO when the Agreement was executed.
 
 
 3
 The Master License Agreement specified that the parties understood that MECO would "transfer its rights in this Agreement to a newly formed business entity, which shall be created for the purposes of assuming the rights and duties created in this Agreement." It was expected by Jiffy Lube representatives that Morgan would set up and control the new company.
 
 
 4
 On January 1, 1988, in accordance with the parties' agreement, MECO transferred its rights and duties under the Master License Agreement to Pacific Lubrication Ltd. (PLL), a Delaware shell corporation set up by Morgan's attorneys. PLL in turn transferred its rights and duties under the Agreement pertaining to Australia and New Zealand to Pacific Lubrication (ANZ) Ltd. (PLA), another Delaware shell corporation set up by Morgan's attorneys. PLA was owned by MECO, Morgan, Shea, and Kevin Rodgers, an employee of Morgan's. In turn, PLA transferred its rights and duties under the Agreement to Jiffy Lube (Aust.) Pty. Ltd. (JLA), a Queensland, Australia company formed by Morgan and owned by PLA.[1] Jiffy Lube approved the transfers.
 
 
 5
 On December 31, 1987, Morgan and Shea executed a second promissory note ("the second note"), which is the contract now in dispute. This note replaced the first note, restructured the payments to Jiffy Lube (extending the period of repayment), and added JLA as a promisor. Jiffy Lube prepared the second note in Baltimore and sent it to JLA's managing director, Kevin Rodgers, in Hawaii. Rodgers signed the note there on behalf of JLA and forwarded it to Morgan in California, where Morgan and Shea signed it. The signed note was then mailed back to Jiffy Lube's Baltimore headquarters.
 
 
 6
 Morgan and Shea made timely payments to Jiffy Lube through December 1988. That same month, Jiffy Lube assigned its right to payments under the note to Sanwa Business Credit Corp. Timely payments were made to Sanwa in Illinois until July 1989. More than a year after it ceased receiving payments, Sanwa declared the note in default and reassigned it to Jiffy Lube in September 1990. After making a demand for payment on the note on September 24, 1990, Jiffy Lube brought this action seeking the unpaid principal, interest, and attorneys' fees.
 
 
 7
 In their Answer to Jiffy Lube's Complaint, Morgan and Shea alleged, as affirmative defenses, that Jiffy Lube had violated both California and Maryland franchise law by failing to register the franchise offer in either state, by failing to provide them with an offering circular or prospectus and other documents required by each state's law, and by omitting material facts from its written and oral communications with them. Morgan and Shea also alleged that Jiffy Lube had induced them to enter the agreement through fraud and negligent misrepresentation, that their promise under the note lacked consideration, and that the interest rate charged in the note was usurious. Jiffy Lube's conduct, Morgan and Shea argued, rendered the note unenforceable or justified its rescission. Alternatively, Morgan and Shea asserted that the damage they incurred as a result of Jiffy Lube's conduct should act as a setoff and/or a recoupment against Jiffy Lube's claims.
 
 
 8
 Jiffy Lube then moved for summary judgment which the district court granted. As an initial matter, the district court rejected Morgan and Shea's argument that California (or Australia) law should apply and instead concluded that Maryland law governed its resolution of the legal issues in the case because the note was executed in Maryland. On that basis, the court then rejected as irrelevant Morgan and Shea's argument that the interest rate charged under the note was usurious under the laws of California and Australia.
 
 
 9
 The court then rejected Morgan and Shea's defenses that sought to avoid liability on the basis of alleged violations by Jiffy Lube of Maryland and California franchise laws, on the grounds that Morgan and Shea were not "franchisees" and therefore lacked standing to challenge violations of the franchise laws.
 
 
 10
 The district court also rejected as meritless Morgan and Shea's argument that, if they had no rights under the Master License Agreement, their obligation under the note lacked consideration. Finally, the district court rejected Morgan and Shea's allegations that Jiffy Lube had induced them to enter the franchise agreement through fraud and negligent misrepresentation. Accordingly, the court ordered Morgan and Shea to pay the balance of $303,558.54 allegedly due and owing on the note, and interest of 15% per annum until payment was made.
 
 
 11
 This appeal followed.
 
 II
 
 12
 As a preliminary matter, we conclude that the district court correctly looked to Maryland conflict of law rules at the choice of law stage, see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941), but erred in then applying Maryland rather than California law as the substantive law governing the matters at issue. Under Maryland conflicts of laws rules, the law of the place of contracting-"the place where the last act necessary to complete the contract was performed"-governs questions relating to the validity, effect, and interpretation of a contract. See Mallinckrodt v. Whittaker M.A. Bioproducts, Inc., 566 A.2d 1113, 1116 (Md. 1989) ("In deciding questions of the validity and construction of a contract, we apply the principle of lex loci contractus, under which we look to the law of the jurisdiction where the contract was made."); see also Grain Dealers Mut. Ins. Co. v. Van Buskirk, 241 Md. 58, 65-66, 215 A.2d 467, 471 (1965) ("The locus contractus is the place where the last act is performed which makes an agreement a binding contract."); Continental Cablevision v. United Broadcasting, 873 F.2d 717, 720 (4th Cir. 1989) (applying Maryland choice of law rules).
 
 
 13
 Jiffy Lube contends, and the district court held, that under this choice of law rule Maryland law should govern resolution of the substantive issues because the words "Baltimore, Maryland" were typed above the date on the note and the note referred to the interest rate of the Maryland National Bank as the rate to be applied under the note. On this basis, the district court held that the plain language of the contract dictated that Maryland substantive law should be applied. But the choice of law question was where the note was executed, and this could not be determined solely by reference to these two points which, indeed, are but marginally, if at all, relevant to that question. Under Maryland law, absent an agreement between the parties to the contrary, the place of execution of a contract is the only relevant consideration. Therefore, the governing choice-of-law rule requires that we look beyond the contract to the actions of the parties in order to deduce which state's substantive law governs. See, e.g., Keco Industries, Inc. v. ACF Industries, Inc., 316 F.2d 513 (4th Cir. 1963) (applying Maryland conflicts-of-law rules).
 
 
 14
 The last act necessary to make the second note effective was taken by Morgan and Shea when they signed the promissory note in California. Jiffy Lube argues that the second note did not become effective until Jiffy Lube received the signed note in Maryland and canceled the first note, but it is clear that Jiffy Lube made the offer by drafting and mailing the note to Morgan and Shea and that they accepted the offer when they signed the note without altering its conditions and mailed it. See Reserve Ins. Co. v. Duckett, 238 A.2d 536, 541 (Md. 1968) ("The well established rule is that in the absence of any limitation or provision to the contrary in the offer, the acceptance of the offer is complete and the contract becomes binding upon both parties when the offeree deposits the acceptance in the post box."). The final act which made the agreement binding therefore was Morgan and Shea's signing of the second note, which occurred in California. For this reason, California substantive law governs in this action.
 
 III
 
 15
 Applying California law, we turn to the merits, and first consider whether, as Morgan and Shea contended, the note was usurious. We hold that it was.
 
 
 16
 The California Constitution limits the maximum interest rate on any loan or forbearance of money for any use other than personal, family, or household to:
 
 
 17
 the higher of (a) 10 percent per annum or (2) 5 percent per annum plus the rate on the 25th day of the month preceding the earlier of (i) the date of execution of the contract to make the loan or forbearance, or (ii) the date of making the loan or forbearance established by the Federal Reserve Bank of San Francisco on advances to member banks under Sections 13 and 13a of the Federal Reserve Act ...
 
 
 18
 Cal. Const. art. XV, § 1. Where, as here, a contract provides for a variable interest rate, the rate may be usurious if the interest charged for a particular period of forbearance exceeds the legal limit, even if the average interest on a variable-rate loan does not exceed the maximum rate. McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 578 P.2d 1375, 1383 (Cal. 1978).
 
 
 19
 The maximum interest rate which Jiffy Lube could have charged, under California law, was eleven percent (11%). As Jiffy Lube concedes, it received two payments that included interest in excess of this maximum rate, and the judgment awarded it interest on the balance due at the higher rate of 15%. Morgan and Shea's contention that under California law the "taint of usury on the note prevents the recovery of any interest thereunder and allows the borrower to recover all interest paid to the lender" (citations omitted), is, however, without merit. Their note payable to Jiffy Lube expressly limited the effect of any invalidity to the scope of that invalidity.[2] The only effect of the usurious charge under California law therefore is in the amount of interest properly recoverable, a matter that can be determined on remand.
 
 IV
 
 20
 We next consider the district court's rejection of Morgan and Shea's affirmative defenses that Jiffy Lube violated both Maryland and California franchise registration and disclosure requirements in offering and selling the franchise and thus could not enforce the franchise purchase agreement.[3] The district court rejected these defenses on the basis that because Morgan and Shea were not themselves the "franchisees," they had no standing to raise violations of the franchise as equitable defenses to this action on the promissory note. We agree that whether because "standing" is lacking or, more fundamentally, because obligation on the note is not conditioned upon payee compliance with franchise filing and disclosure requirements, the defenses fail as a matter of law.
 
 V
 
 21
 We next consider the district court's rejection of Morgan and Shea's affirmative defense that Jiffy Lube's fraud and negligent misrepresentations in inducing purchase of the franchise made the note unenforceable. We find no error in the rejection.
 
 
 22
 This theory of defense was based upon statements allegedly made by Jiffy Lube's representatives to Morgan respecting the expectable profitability of the franchise. Specifically, Morgan deposed that he was told that "if we were to hook up with Jiffy Lube as investors, have an operation run, that with their capability and their experience and record that it would be very profitable." Morgan claimed that this induced a purchase that otherwise would not have been made. We agree that on the summary judgment record this defense failed as a matter of law. In the first place, as the district court pointed out, the alleged representations are properly characterized as "simply 'dealer['] puff' ". It therefore did not qualify as the kind of misrepresentation of a material fact that is an essential element of common law fraud or misrepresentation as generally recognized. See, e.g., Hunter v. Zogarts, 534 P.2d 377, 381 (Cal. 1975). We therefore think the defense could have been rejected as a matter of law on that basis alone.
 
 
 23
 Beyond that, we think it also fails as a matter of law for lack of sufficient evidence of reasonable reliance, another essential element of common law fraud or misrepresentation (whether intentional or negligent) whether advanced as claim or, as here, as equitable defense. Morgan conceded in his deposition that he didn't recall the specific statements by Jiffy Lube's representatives that induced him to purchase the franchise rights for the South Pacific, but simply remembered being given an overall impression that franchises in the PacificRim would be very profitable. Shea conceded in his deposition that he didn't examine any documents relating to Jiffy Lube, its performance, or its operations prior to signing the purchase agreement, apparently being content to rely for verification of any representations made by Jiffy Lube upon a visual inspection of a Pasadena Jiffy Lube franchise operation. This conduct does not, as a matter of law, demonstrate the kind of reasonable reliance required to establish fraud or misrepresentation invalidating an otherwise valid objection.
 
 VI
 
 24
 Accordingly, we affirm the district court's grant of summary judgment establishing Jiffy Lube's entitlement to recover the balance owing on the promissory note. We remand for recomputation of the damages by limiting the liability for interest, both that already paid and that still owing, to eleven percent (11%).
 
 SO ORDERED
 
 
 [1]
 JLA was the company that was actually to operate the Jiffy Lube service centers and sell subfranchises in Australia. It was controlled by Morgan and Shea. The assignment to JLA of MECO's rights under the Agreement had no effect on Morgan's and Shea's obligation under the promissory note
 
 
 [2]
 The note provided that:
 In case any provision (or any part of any provision) contained in this Note shall for any reason held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not effect [sic] any other provision (or remaining part of the effected provision) of this Note but this Note shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) has never been contained herein but only to the extent it is invalid, illegal or unenforceable.
 
 
 [3]
 The parties agree that the choice of Maryland or California law does not affect the resolution of this issue. The district court's application of Maryland law, therefore, is of no consequence on this issue. See Mallinckrodt, 566 A.2d at 116