**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN GLUDE,
Plaintiff-Appellee,

v.

MARTIN STERENBUCH,                                    No. 97-1026
Defendant-Appellant,

and

SABANA GRANDE PRAWN FARMS,
LIMITED,
Defendant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-95-2-JFM)

Argued: October 30, 1997

Decided: January 13, 1998

Before MURNAGHAN, HAMILTON, and LUTTIG,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Matthew Anthony Rizzo, Washington, D.C., for Appel-
lant. James Joseph Nolan, Jr., PIERSON, PIERSON & NOLAN, Bal-
timore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, Martin Sterenbuch (Sterenbuch), entered into a business venture with Appellee, John Glude (Glude). The company, known as Aquaculture Enterprises, Inc. (AEI), was apparently not profitable, and AEI failed for several years to pay its federal withholding taxes. Following an Internal Revenue Service (IRS) investigation, Glude was determined to be solely responsible for AEI's debt, and was thereafter required under 26 U.S.C. § 6672 (1988) to pay the debt himself. Glude filed suit against Sterenbuch in federal court, seeking to recover Sterenbuch's share of the IRS tax debt on a theory of contribution or breach of contract. Following a bench trial, the district court found for Glude on both counts. On appeal, Sterenbuch challenges various aspects of the bench trial, including the verdict in favor of Glude.

We find none of Sterenbuch's arguments convincing. We hold that Glude and Sterenbuch had an enforceable contract to share in all corporate debts, and that Sterenbuch breached the contract by failing to share in the payment of the IRS tax debt. This holding makes it unnecessary to determine if, in the alternative, Maryland state courts would recognize a statutory right of contribution for federal tax debts imposed under § 6672.

I.

Appellant, Sterenbuch, is a Washington, D.C. lawyer who in 1981 approached Appellee, Glude, a marine biologist, concerning the feasibility of raising fresh water prawns in Puerto Rico. In 1983, after lengthy discussions and the preparation of a feasibility study, the parties incorporated AEI under the laws of Maryland to carry out the prawn farming enterprise. Under the terms of the parties' agreement, Sterenbuch was to be president and Glude vice-president of the corpo-

2

ration. In addition, Sterenbuch and Glude were to sit as directors of AEI, making them "responsible for the control and management of the affairs, property, and interest of the Corporation."

Also in 1983, Sterenbuch and Glude formed Sabana Grande Prawn Farms (SGPF), of which they appointed themselves general partners. They entered into a written partnership agreement which was updated in September 1988. Under the terms of the partners' agreements, SGPF was to own all of the stock of AEI; Glude was to operate as a "technical manager;" and Sterenbuch was to provide "business/financial and legal management services." Additionally, SGPF was to "provide all necessary capital and operating funds," and AEI was to "manage and account to the partnership for such funds."

SGPF and AEI eventually leased land in Puerto Rico and began the fresh-water prawn farming operation. The firm's prospectus listed Sterenbuch as "President of AEI and as general partner in the parent company [SGPF]." All necessary funds raised through SGPF were transferred to AEI as needed for development. The funds, which totaled more than $5,000,000, were raised from a combination of investments and loans. Although Glude was a general partner of SGPF, he was not authorized to sign checks on behalf of the company.

In July 1990, Glude became concerned with the fact that employee withholding taxes were regularly not being paid by AEI. He sent a memorandum to Sterenbuch explaining that, as corporate officers, he and Sterenbuch could be held responsible by the IRS for any unpaid taxes, and proposing that the partners share equally in AEI's liabilities. Sterenbuch wrote back, expressing his consent to Glude's proposal and noting that, in his view, the agreement simply confirmed "what was always [the parties'] implicit understanding."

A year and a half later, on February 23, 1992, the Internal Revenue Service (IRS) sent Glude a letter proposing to assess a "100 Percent Penalty" against him pursuant to the Internal Revenue Code, 26 U.S.C. § 6672, for AEI's unpaid withholding taxes for the years 1988-1991. The assessment totaled $137,744.36.

After receiving the IRS notice, Glude contacted Sterenbuch, who referred Glude to attorney Julian Spirer, a friend of Sterenbuch's who

3

practiced law in the District of Columbia and who had previously performed various legal tasks for AEI and SGPF. Glude took Sterenbuch's advice and supplied Spirer with background information regarding the case. Spirer then authorized his legal assistant, Jeff, to draft an appeal to the IRS on behalf of Glude. The appeal was unsuccessful. Glude later learned that although he had advised Spirer of Sterenbuch's role in the nonpayment of AEI's withholding taxes, the appeal drafted by Jeff did not contain any reference or suggestion that Sterenbuch might be equally responsible for the IRS debt.

After losing his appeal with the IRS, Glude drafted a letter to the agency informing them that Sterenbuch and he were both general partners of AEI and shared various management functions. Perhaps as a result of that prodding, a short time later Sterenbuch himself received a proposed "100 Percent Penalty" assessment (also in the amount of $137,744.36) from the IRS. Sterenbuch responded by writing to the IRS and informing them, among other things, that he had no management responsibilities over AEI; that he had never been involved in the day-to-day operation of the company; and that he had no control over AEI bank accounts. Thus, he contended, he was not equally responsible with Glude for any of AEI's delinquent taxes. On July 1, 1992, apparently in response to some of the information Sterenbuch had supplied, the IRS determined that Sterenbuch was not responsible for AEI's tax debt and removed its $137,744.36 assessment against him.

Because the IRS continued to consider Glude fully responsible for AEI's debt, in January 1995 Glude filed suit against Sterenbuch in the United States District Court for the District of Maryland. Glude's complaint sought relief for Sterenbuch's portion of the IRS debt, based on either (1) a common law right of contribution, or (2) the parties' agreement to share equally in all AEI liabilities.

Glude's case proceeded to trial before the Honorable J. Frederick Motz. In response to a pretrial motion by Glude, the court issued an order freezing the partnership accounts of SGPF pending the outcome of the litigation. The court did not require Glude to post bond as security for the order. The parties later reached a tentative settlement agreement, and pursuant to Local Rule 111.1**1** they requested and, on

_____

**1** Local Rule 111.1 allows a court to dismiss a case in which the parties have notified the court that a settlement has been reached. An order

4

January 20, 1995, the district court granted, an order dismissing Glude's action and vacating the temporary restraining order. The order was issued "without prejudice to the right of a party to move for good cause within thirty days" to reopen the case. Glude's attorney wrote the district court a letter within several days of that order explaining that all of Glude's claims were not supposed to have been dismissed pursuant to the settlement.

Although neither party filed to reopen the case within the thirty day period, the parties' settlement was never consummated and, on March 7, 1995, Glude filed an amended complaint and his original case was reopened. Sterenbuch moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that Glude's case was time-barred and failed to state a claim on which relief could be granted. The district court denied those motions, as well as a similarly based motion by Sterenbuch for summary judgment at a later date.

The case ultimately proceeded to a bench trial on October 1-2, 1996. Among other evidence introduced at trial, Glude offered the testimony of Dennis DeLong, who had worked as Assistant General Manager of AEI in Puerto Rico from early 1984 until the middle of 1990. While serving in that position, DeLong maintained communications with Sterenbuch, speaking with him by telephone at least once a week, and also communicating by way of mail and FAX. During the course of those activities, DeLong became familiar with Sterenbuch's role in the operation of AEI, which he described as providing financial and legal expertise, and managing the financial affairs of AEI. DeLong also testified that whenever insufficient funds existed to cover the payment of AEI's outstanding bills, he would contact Sterenbuch in Washington, D.C., because Sterenbuch was able to disburse funds, make bank or wire transfers, or send a check to cover the payables.

In his Washington, D.C. office, Sterenbuch had available to him AEI's computer printout of payables, including federal payroll taxes

_____

issued pursuant to Rule 111.1 results in the dismissal of all claims, counterclaims, cross-claims, and third-party claims, unless otherwise stated in the order. See Local Rule 111.1.

5

owed to the government. DeLong testified that he and Sterenbuch occasionally discussed the payment of federal payroll taxes and, on "many occasions," when there was not enough money to go around, Sterenbuch directed that DeLong pay other creditors instead of the U.S. government.

At the conclusion of the evidence, the court found in favor of Glude on his contribution and breach of contract claims, ordering Sterenbuch to share equally in the payment of the IRS debt. Sterenbuch filed, and the court denied, a post-trial motion for reconsideration or a new trial.

II.

The district court entered a verdict in favor of Glude on his alternative breach of contract or contribution claims. On appeal, Sterenbuch raises two issues with respect to this verdict. First, as to the breach of contract claim, whether the district court erred in concluding that the parties had an enforceable contract to share responsibility for AEI's debts. Second, with regards to the contribution claim, whether the district court erred in concluding that Maryland courts would recognize a state law right of contribution for federal tax debts arising under § 6672. Because we answer the first question in the affirmative -- and therefore hold that Sterenbuch is contractually bound to share in the IRS tax debt -- we have no occasion to address the second.

Our analysis of Glude's contract claim requires, as an initial matter, a determination as to which forum's law is to be applied. A federal court exercising diversity jurisdiction, as in the present case, must apply the substantive law of the state in which it sits. See Erie R.R. v. Tompkins, 304 U.S. 64, 78-79 (1938). This includes applying the forum state's choice of law rules. See Klaxon Co. v. Stentor Elec. Mfg., 313 U.S. 487, 496 (1941).

Under Maryland law, questions regarding the validity, effect, and interpretation of a contract are resolved according to the principle of lex loci contractus, meaning the law of the state where the contract was made. See Mallinckrodt v. Whittaker M.A. Bioproducts, Inc., 566 A.2d 1113, 1116 (Md. 1989) (citation omitted). The place of contracting is defined by Maryland law as "the place where the last act neces-

6

sary to complete the contract was performed." Id. (citing Grain Dealers Mutual Insurance Co. v. Van Buskirk, 215 A.2d 467 (Md. 1965)); see also Continental Cablevision of New England, Inc. v. United Broadcasting Co., 873 F.2d 717, 720 (4th Cir. 1989) (applying Maryland choice of law rules). In the present case, the district court apparently made no findings as to the locus of the contract. Nevertheless, because the parties have not contested the district court's application of Maryland law, see Philip Bilancia v. General Motors Corp., 538 F.2d 621, 623 (4th Cir. 1976) (per curiam), we assume for purposes of appeal that such application was appropriate.

Glude's breach of contract claim is based on an exchange of letters between the parties in July of 1990. At that time, Glude had become concerned about the possibility of AEI's corporate officers being held personally accountable by the IRS for any taxes the company had failed to pay. He wrote Sterenbuch to express his concern and to propose an agreement in which the parties would share equally in all of AEI's liabilities:

> [W]e as officers of AEI are personally responsible for payment of IRS . . . taxes withheld from employees salary. As of the first of July, AEI owed IRS a total of $129,531 of which about $60,000 was withheld employees salary for Social Security (FICA). . . . [This is troublesome] since . . . [the IRS] can call on us for payment of the amounts due if AEI can not or does not pay these amounts.

> In view of this possibility, and in view of the basic tenet of our partnership to share equally in all aspects, I suggest the following actions.

> 1. Develop a legally binding agreement that each of us will be responsible for 50% of any payments due because of our personal guarantees or our roles as officers of the Corporation.

In response to Glude's letter, Sterenbuch wrote back as follows:

>  In response to your memorandum of July 22 and as per our telephone conversation, this is to confirm our agreement

7

> that to the extent that either of us is called upon to pay personally any liabilities of [AEI], in cases where we are equally liable for such indebtedness . . . that we will share equally in all such payments.
>
> John, I think this confirms what was always our implicit understanding.

Under Maryland law, there is no question that Glude's letter constituted a valid offer, and that Sterenbuch accepted the offer during the referenced telephone conversation or by writing his return letter. Nor is there any doubt that the parties traded valuable consideration, as each received from the other a promise to be personally responsible for one-half of AEI's liabilities.

Sterenbuch raises several arguments in an effort to avoid his obligations under the parties' agreement. First, he contends that the district court erred in "second-guessing" the IRS's determination that he was not responsible for AEI's tax debt. We disagree. The IRS's determination of Sterenbuch's responsibility to the government, although relevant, is not controlling of our determination of Sterenbuch's obligations to Glude. In any event, we agree with the district court's decision to deviate from the IRS's findings, since the court need not "accept without question administrative pronouncements clearly at variance with established facts." National Labor Rel. Bd. v. Morganton Full Fash. Hos. Co., 241 F.2d 913, 915-16 (4th Cir. 1957); see Bedford County Mem. Hosp. v. Health & Hum. Servs. , 769 F.2d 1017, 1022 (4th Cir. 1985) (citation omitted) ("Agency action is arbitrary and capricious if the agency . . . reaches a decision that is so implausible that it cannot be ascribed to a difference in view.").

In reaching the conclusion that Sterenbuch was equally responsible for AEI's tax liabilities, the district court was mindful of our opinion in O'Connor v. United States, 956 F.2d 48 (4th Cir. 1992), where we explained some of the various factors that militate toward labeling an individual a responsible person for purposes of § 6672. We held that the inquiry must focus on "substance rather than form," and that the key issue is the person's "authority over an enterprise's finances or general decision making." Id. at 51. "The substance of the circumstances must be such that the officer exercises and uses his authority

8

over financial affairs and general management . . . ." Id. This can be determined by reference to other factors, such as control over payroll and decisions over which bills to pay or not to pay. See id.

With these factors in mind, the district court concluded that Sterenbuch had wide-ranging management responsibilities at AEI, and that as CEO of AEI's parent company, SGPF, he controlled the "spigot" of funds on which AEI relied for its survival. The court also concluded, based on the testimony of DeLong, that Sterenbuch had on occasion directed that certain creditors be paid rather than the IRS.

In light of this evidence, the district court concluded, and we agree, that the IRS's decision to remove Sterenbuch's status as a responsible person was based on an incomplete factual record and was poisoned by Sterenbuch's intentional misrepresentation of the scope of his management role at AEI. We agree with the district court that Glude and Sterenbuch were equally responsible for the creation of AEI's tax debt and that sharing equally in the payment of that debt was squarely within the terms of the parties' July 1990 agreement.

Sterenbuch next argues that the parties agreement is unenforceable as a matter of public policy. This argument is based on the language of § 6672, which allows for the imposition of liability for "willfully" failing to pay withholding taxes.[2] Sterenbuch reads this willfulness language to require a showing of egregious conduct or evil intent on the part of the delinquent taxpayer. Therefore, he argues, § 6672 was intended to punish wrongdoers, and it violates public policy for a court to enforce a contract in which Sterenbuch shares in Glude's punishment.

We find no merit to this argument. To our knowledge, no court has ever held that egregious conduct or evil intent is required for the imposition of liability under § 6672. In fact, this Court has expressly

---

[2] Internal Revenue Code, 26 U.S.C. § 6672(a) provides that "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax . . . shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded . . . ."

9

held the opposite. In Turpin v. United States , 970 F.2d 1344 (4th Cir. 1992), we held that a finding of willfulness under § 6672 merely requires the taxpayer to have knowingly or recklessly failed to pay the required taxes:

> One must act "intentionally . . . and voluntarily." . . . The failure to pay . . . taxes cannot be willful unless there is either "knowledge of nonpayment or reckless disregard of whether the payments were being made." . . . The "intentional preference of other creditors" over the United States is "sufficient to establish the element of willfulness" . . . .

Id. at 1347 (citations omitted); see also O'Connor, 956 F.2d at 52 n.*; United States v. Pomponio, 635 F.2d 293, 298 n.5 (4th Cir. 1980). We therefore reject Sterenbuch's contention that § 6672's requirement of willful conduct necessarily demonstrates a punitive purpose.

Sterenbuch also maintains that the statute is punitive because, in addition to requiring payment of the tax bill, the statute imposes a fine on the delinquent taxpayer amounting to 100% of the total tax bill. This is simply incorrect. Although nothing in the language of § 6672 would prevent the IRS from using the statute in such a manner, as a matter of official policy the IRS does not utilize § 6672 to collect payments over and above the amount of taxes owed. See Pomponio, 635 F.2d at 298 n.6 ("[I]t is IRS policy that the amount of the tax will be collected only once. After the tax liability is satisfied, no [further] collection action is taken . . . .") (quoting United States v. Sotelo, 436 U.S. 268, 279-80 n.12 (1978) (quoting statement from Comptroller General)); see also Gens v. United States, 615 F.2d 1335, 1339 (Ct. Cl. 1980) (citations omitted) ("The Government can enforce [§ 6672] assessments until it has collected successfully an amount equal to the payroll tax liability which has given rise to the penalty assessments."); I.R. Manual, Policy Statement P-5-60, MT 1218-56 (Feb. 25, 1976) ("The 100-percent penalty . . . will be used only as a collection device . . . [where] such taxes cannot be collected from the corporation itself.").

In light of all this, it is clear that, contrary to Sterenbuch's contentions, § 6672 is used not as a means of punishment, but merely as a tax collection device to ensure the payment of delinquent taxes where,

10

as here, the corporation itself cannot afford to pay. See Pomponio, 635 F.2d at 298 n.6 ("IRS uses the 100-percent penalty only when all other means of securing the delinquent taxes have been exhausted.") (quoting Sotelo, 436 U.S. at 279-80 n.12)); O'Connor, 956 F.2d at 50.

The record of the instant case is consistent with IRS policy. The assessment sheets in which the IRS kept track of AEI's growing tax liability demonstrate in no uncertain terms that the penalty of $137,744.36 assessed against Glude represented nothing more than the total amount of taxes AEI had failed to pay for the years in question. Because Glude was not required to pay an amount over and above AEI's total tax bill, there is no merit to Sterenbuch's suggestion that Glude was subjected to a punitive measure.

We are confident that the contract in question is enforceable under Maryland law. Maryland courts have long recognized "the general rule that there is contribution among parties to a contract . . . ." See Baker v. Miles & Stockbridge, 620 A.2d 356, 379 (Md. 1993). This includes, of course, situations like the case sub judice, where "the parties are bound [to a joint obligation] by a statute [or] by an instrument . . . ." Id. (citations omitted). Therefore, in Maryland, a right of contribution arises among parties to a contract where such a right was agreed to by the parties in an instrument, or where a common obligation is imposed by statute.

Although there may be every reason to believe that Maryland courts would recognize a statutorily imposed right of contribution, under state law, for federal tax obligations arising under § 6672, see Lyon v. Campbell, 596 A.2d 1012 (Md. 1991) (recognizing a right of contribution for state-imposed corporate tax debts arising from a state tax statute analogous to § 6672), we find it unnecessary to reach that conclusion. Instead, we hold that, in the case at bar, a right of contribution exists under Maryland law, not by virtue of a statutorily imposed obligation, but as a result of a signed instrument in which the parties agreed to share equally in certain liabilities. Because Maryland courts approve of such contracts, and because we conclude that obligations imposed pursuant to § 6672 are not punitive, we have no diffi-

11

culty concluding that the parties' contract is enforceable as a matter of public policy.**3**

III.

Sterenbuch's appeal raises four additional charges of error, only two of which merit discussion. For the reasons stated below, we affirm the district court on both matters.

A. <u>Reinstatement of Time-Barred Action</u>

Sterenbuch argues that Glude's entire cause of action was time-barred and should not have been heard by the district court. That contention is based on the fact that Glude, in filing to reopen his suit in March of 1995, failed to do so within the thirty day period specified in the district court's Rule 111.1 dismissal order. Sterenbuch raised this same argument before the district court pursuant to his motion to dismiss under Rule 12(b)(6), and the district court rejected it, stating that "Plaintiff's counsel properly informed the court, five days after the Rule 111.1 order, that the entire action should not have been dismissed . . . . That notice was entirely sufficient."

Although we are not necessarily persuaded by the district court's reasoning, a prior decision of this Court provides that Glude's claim was not time-barred. In <u>Choice Hotels Int'l, Inc. v. Goodwin & Boone</u>, 11 F.3d 469 (4th Cir. 1993), we held that a dismissal pursuant to Local Rule 111.1 and its FRCP counterpart, Rule 41(a)(2), is presumed to be without prejudice unless the court's order is "explicit and clear" in warning the parties that a failure to meet conditions stated in the order will result in dismissal with prejudice. <u>See id.</u> at 471. Applying that rule, we held that a Rule 111.1 dismissal subject to the right of a party to refile "without prejudice . .. within thirty days" was not sufficient to put a party on notice that a dismissal with prejudice would result from a failure to refile within the designated time period. <u>See id.</u> at 471-73. Because the district court's order in <u>Choice Hotels</u> contained language identical to that used by the court in the present case, we conclude that any dismissal resulting from Glude's failure

_____

**3** Indeed, we believe public policy is served by requiring Sterenbuch to share equally in the payment of a debt he helped to create.

to meet the 30-day refiling deadline was a dismissal without prejudice only.

B. Issuance of TRO Without Bond

After filing his complaint at the outset of this litigation, Glude made an application on December 15, 1994, pursuant to Fed. R. Civ. P. 65, for a temporary restraining order (TRO) to freeze all partnership bank accounts at AEI's parent corporation, SGPF. The district court granted the TRO on January 9, 1995, without requiring Glude to post bond as required by Rule 65(c). Sterenbuch argues that the court's failure to require the posting of bond is reversible error.

We disagree. Although there is no question that the district court's failure to require the posting of bond was in error, see Md. Dept. Human Resources v. U.S. Dep't Agric., 976 F.2d 1462, 1483 & n.21 (4th Cir. 1992), Sterenbuch's claim on this issue was mooted by the district court's order of January 19, 1995, which dismissed Glude's cause of action pursuant to a tentative settlement agreement and vacated the TRO. Although Glude's case was eventually reopened, the record reveals that the TRO was never reissued, and Sterenbuch's appeal of this issue is moot.

IV.

In summary, we reject all of Sterenbuch's challenges to the district court's judgment, and affirm the verdict in favor of Glude on his breach of contract claim. We take no position as to whether Maryland state courts would recognize a statutory right of contribution for federal tax obligations imposed pursuant to § 6672.

AFFIRMED

13