400 So.2d 499 (1981)
JEMCO, INC., a Foreign Corporation, and United States Fire Insurance Company, a Foreign Insurance Company, Appellants,
v.
UNITED PARCEL SERVICE, INC., a Foreign Corporation, and Liberty Mutual Insurance Company, Appellees.
No. 79-944.
District Court of Appeal of Florida, Third District.
June 2, 1981.
Rehearing Denied July 24, 1981.
Wicker, Smith, Blomqvist, Davant, Tutan, O'Hara & McCoy and Richard A. Sherman, Miami, for appellants.
Magill & Reid and Edward L. Magill, Miami, for appellees.
Before SCHWARTZ and DANIEL S. PEARSON, JJ., and VANN, HAROLD R. (Ret.), Associate Judge.
*500 DANIEL S. PEARSON, Judge.
United Parcel Service, Inc. (UPS), an Ohio corporation with its principal place of business in Connecticut,[1] contracted with Jemco, Inc., a Texas corporation, for the purpose of having Jemco install a conveyor system in a building UPS was having built in Miami.[2]
Harold McKinney, a Jemco employee, was injured installing the conveyor. McKinney sued UPS, which, in turn, filed a third-party complaint against Jemco for contractual and common law indemnity. UPS settled with McKinney, and the case proceeded to trial on the indemnity claims, resulting in judgment for UPS. Later, the trial court entered orders awarding costs and attorneys' fees to UPS, and Jemco appealed. We affirm the final judgment, and consequent order taxing costs, upon a holding that UPS was entitled to be indemnified under its contract with Jemco.[3] We reverse, in part, the order awarding attorneys' fees by reducing the amount awarded.
The indemnity provision of the contract between Jemco and UPS provided, in pertinent part:
"Contractor [Jemco] hereby assumes the entire responsibility and liability for any and all damage or injury of any kind or nature caused by or resulting from the execution of the work occurring in connection therewith and agrees to indemnify and save harmless UPS ... against any and all claims, liabilities, loss and expenses... . Such indemnity shall include the defense of all claims made against UPS... ."
Jemco contends that this indemnity provision is void and unenforceable under Section 725.06, Florida Statutes (1975).[4] UPS, although not conceding invalidity under Florida law, contends, and we agree, that Connecticut law, under which, UPS argues, the indemnity provision is valid and enforceable, applies.
The contract negotiations between Jemco and UPS took place in New York and Texas. After agreement was reached, a Jemco representative signed the contract in Texas and forwarded it to UPS at its headquarters in Connecticut, where it was executed by UPS. Jemco does not dispute that the last act necessary to complete the contract, the signing by UPS, was done in Connecticut.
The forum court applies its own conflict of law rule respecting the contract to make the initial determination of the law to be applied. Under the law of Florida, the forum, that conflict of law rule is that a contract is made at the place where the last act necessary to complete the contract is done. See Goodman v. Olsen, 305 So.2d 753 (Fla. 1975); Wingold v. Horowitz, 292 So.2d 585 (Fla. 1974); Ray-Hof Agencies, Inc. v. *501 Petersen, 123 So.2d 251 (Fla. 1960); Brown v. Case, 80 Fla. 703, 86 So. 684 (1920); Boat Town U.S.A., Inc. v. Mercury Marine Division of Brunswick Corporation, 364 So.2d 15 (Fla. 4th DCA 1978); Regal Shoe Shops v. Kleinman, 361 So.2d 765 (Fla. 3d DCA 1978); Carriers Insurance Company v. LeRoy, 309 So.2d 35 (Fla. 3d DCA 1975). It is also well settled in Florida that matters bearing on the validity and substantive obligations of contracts are determined by the law of the place where the contract is made (lex loci contractus.)[5],[6]Walling v. Christian & Craft Grocery Company, 41 Fla. 479, 27 So.2d 46 (1899); Eagle Star Insurance Company v. Parker, 365 So.2d 780 (Fla. 4th DCA 1979); State-Wide Insurance Company v. Flaks, 233 So.2d 400 (Fla. 3d DCA 1970). See Boat Town U.S.A., Inc. v. Mercury Marine Division of Brunswick Corporation, supra. Indemnity being a substantive obligation of the contract, UPS's claim is governed by Connecticut law, the lex loci contractus.[7]
Moreover, the indemnity provision of the contract between UPS and Jemco is valid and enforceable under Connecticut law. In Laudano v. General Motors Corporation, 34 Conn.Sup. 684, 388 A.2d 842 (1977), an indemnity provision functionally identical to the provision in question here[8] was held valid. General Motors (GMC) contracted with Boyle Equipment Company for the purchase and installation of six dock shelters at a GMC plant. While installing the shelters, Laudano, a Boyle employee, was injured. Laudano sued GMC, which filed a third-party complaint against Boyle for indemnification. GMC settled with Laudano and proceeded on its indemnity claim against Boyle. The trial court found for Boyle, holding that the indemnity provision lacked the requisite degree of specificity required to conclude that Boyle intended to indemnify GMC for GMC's own negligence.
On appeal, the Connecticut Superior Court reversed. Noting that Connecticut had not adopted the apparent majority rule that an indemnity contract must contain an express stipulation relieving the indemnitee *502 from liability for loss resulting from his own negligence,[9] the court held:
"[b]y using the language that appears in the indemnity clause in this contract, Boyle agreed to indemnify and protect GMC against all liabilities, no matter how such liabilities were caused, provided that they grew out of the performance of the contract." Laudano v. General Motors Corporation, supra at 845.
The jury here, as in Laudano, made a finding that the injury occurred during the performance of the contract. That finding, under Connecticut law, entitled UPS to recover under the indemnity contract unless there exists in Florida some strong public policy which would require us to avoid the application of Connecticut law in this case. We find none. No Florida public policy bars a business entity from contracting to indemnify another for its wrongdoing. Indeed, Florida law specifically authorizes such indemnity agreements, provided only that the intent to indemnify is clearly and unequivocally expressed. Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equipment Co., 374 So.2d 487 (Fla. 1979). We deem it far more important to protect the expectations of the parties who at arm's length entered into a contract than to refuse to enforce an indemnity provision that fails in Florida, not because it is inherently offensive, but because the magic words which would make the provision valid in this state were not used. See Continental Mortgage Investors v. Sailboat Key, Inc., 395 So.2d 507 (Fla. 1981); M/S Bremen v. Zapata Off-Shore Company, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Compare Olsen v. State Farm Insurance Co., 386 So.2d 600 (Fla. 5th DCA 1980) (where the court held that the "unjust and inequitable" doctrine of contributory negligence, applicable in the fortuitous locus delicti, was against Florida public policy).
Lastly, we turn to the award of attorneys' fees. The trial court awarded UPS attorneys' fees of $71,562.50. This amount consisted of two awards: (1) $11,750.00 paid by UPS to their attorneys pursuant to two interim bills, which award Jemco does not contest and which we affirm. (2) $60,812.50 which the trial court awarded to UPS for 695 unbilled hours at $87.50 per hour. Jemco contests the latter award. It claims only that the trial court was not free to award fees of $87.50 per hour, as a "reasonable per hour fee," because UPS had a prior agreement to pay its attorneys $50.00 per hour. We agree.
Under Florida law,[10] a party entitled to indemnity may recover as damages "... reasonable attorneys fees and ... costs[11] ... which he is compelled to pay as a result of suits by him or against him in reference to [the indemnity action]." Fontainebleau Hotel Corporation v. Postol, 142 So.2d 299, 300 (Fla. 3d DCA 1962).
In Trustees of Cameron-Brown Investment Group v. Tavormina, 385 So.2d 728, 731 (Fla. 3d DCA 1980), we held that a party entitled to recover attorneys' fees as indemnification damages may recover "the amount he must pay his lawyer, or a reasonable fee, whichever is lower." We limited our holding in Cameron-Brown to the exact situation present in this case, "instances where two contracts exist: one between the parties and one between a party and his counsel." The holding in Cameron-Brown is no less controlling because there a contract existed for an express amount of attorneys' fees, and in the present case there was a "previously existing fee arrangement" for UPS to pay its attorneys $50.00 per hour. UPS's position, which we reject, is that its fee arrangement is not binding in the determination of a reasonable *503 fee. As we said in Cameron-Brown, the question, when there is an existing fee arrangement, is not what is a reasonable fee, but rather is the existing fee arrangement reasonable. The court below held $87.50 per hour to be reasonable; a fortiori, $50.00 per hour is reasonable. We reverse the amount of attorneys' fees awarded and remand with directions to reduce the challenged attorneys' fees award to UPS to $34,750.00, for the 695 unbilled hours.
Affirmed in part; reversed in part and remanded.
NOTES
[1] UPS relocated its offices from New York to Connecticut during the negotiations.
[2] Reference to Jemco and UPS includes their respective insurers, United States Fire Insurance Company and Liberty Mutual Insurance Company, parties to this appeal.
[3] Our holding affirming the entire indemnity award based on contractual indemnity makes it unnecessary to decide the validity of UPS's common law indemnity claim.
[4] Section 725.06, Florida Statutes (1975), provides:

"Construction contracts; limitation on indemnification.  Any portion of any agreement or contract for, or in connection with, any construction, alteration, repair, or demolition of a building, structure, appurtenance, or appliance, including moving and excavating connected with it, or any guarantee of, or in connection with, any of them, between an owner of real property and an architect, engineer, general contractor, subcontractor, sub-subcontractor, or materialman, or between any combination thereof, wherein any party referred to herein obtains indemnification from liability for damages to persons or property caused in whole or in part by any act, omission, or default of that party arising from the contract or its performance shall be void and unenforceable unless:
"(1) The contract contains a monetary limitation on the extent of the indemnification and shall be a part of the project specifications or bid documents, if any, or
"(2) The person indemnified by the contract gives a specific consideration to the indemnitor for the indemnification that shall be provided for in his contract and section of the project specifications or bid documents, if any."
[5] In Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980), the Florida Supreme Court rejected lex loci delicti for tort actions and adopted the "significant relationships test" found in the Restatement (Second) of Conflict of Laws §§ 145-46 (1971). Jemco urges us to adopt the significant relationships test" made applicable by Restatement (Second) §§ 186-88, not only to torts, but to contracts. Although the Bishop decision may foretell the end of lex loci contractus in Florida, see Bishop supra, at 1001 n. 1, we are not free to effect such a change in Florida law. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). The Florida conflicts of law rule, originally adopted in Walling v. Christian & Craft Grocery Company, infra, and still extant, is the same as that found in the original Restatement of Conflicts of Laws § 311 (1934), and is that the law to be applied to a contract is the law of the place where the contract was made, not the law of the place with the most significant relationships. See Castorri v. Milbrand, 118 So.2d 563 (Fla. 2d DCA 1960).
[6] Jemco correctly says that questions of remedy are determined by the laws of the forum (lex fori), but incorrectly asserts that a determination of whether Jemco is obligated to indemnify UPS under the terms of the contract involves a question of remedy. See Stuart v. Hertz Corporation, 351 So.2d 703 (Fla. 1977) (indemnity is an obligation, either contractual or by operation of law); University Plaza Shopping Center, Inc. v. Stewart, 272 So.2d 507 (Fla. 1973) (the validity of an indemnity agreement is a matter of contract interpretation). Nor does the fact that the contract was to be performed in Florida change the result, since the indemnity provision does not relate to an insubstantial detail of performance. See Restatement (Second) of Conflict of Laws § 206 (1971) (e.g., where contract provides payment to be made during regular business hours, law of place of performance is looked to to determine what are regular business hours).
[7] The trial court incorrectly ruled that Florida law applied, but held that the monetary limitation requirements of Section 725.06, Florida Statutes (1975), were satisfied by the minimum insurance called for by the contract. Our holding makes it unnecessary to consider whether that ruling was correct.
[8] In Laudano, the indemnity clause read: "If this order covers the performance of labor for Buyer, Seller [the party performing the labor] agrees to indemnify and protect Buyer against all liabilities, claims or demands for injuries or damages to any person or property growing out of the performance of this contract by Seller... ."
[9] Florida has adopted the majority rule. See Charles Poe Masonry Inc. v. Spring Lock Scaffolding Rental Equipment Company, 374 So.2d 487 (Fla. 1979); University Plaza Shopping Center, Inc. v. Stewart, supra.
[10] Although UPS's entitlement to damages pursuant to its contractual indemnity claim is governed by Connecticut law, the amount of damages is a question of remedy, see Zim v. Western Publishing Company, 573 F.2d 1318 (5th Cir.1978), and governed by Florida law. See Goodman v. Olsen, supra.
[11] Jemco does not separately contest the cost award.