United States Court of Appeals,
Eleventh Circuit.
No. 95-4520.

TRUMPET VINE INVESTMENTS, N.V., Nacional Financiera, S.N.C., Plaintiffs-Counter Defendants-Appellees,

Pollypeck International P.L.C., P.P.I. (Holdings) B.V., P.P.I. Delmonte Fresh Produce B.V., Counter-Defendants,

Jorge Aguilar, Enrique Portilla, Alejandro Portilla, William Van Diepen and William Levin, Counter-Defendants-Appellees,

v.

UNION CAPITAL PARTNERS I, INC., Defendant-Counterclaimant-Appellant.

Aug. 28, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 92-2032-CV-WDF), Wilkie D. Ferguson, Jr. Judge.

Before COX and BARKETT, Circuit Judges, and BRIGHT[*], Senior Circuit Judge.

BRIGHT, Senior Circuit Judge.

This case arises from the 1992 sale of P.P.I. Del Monte Fresh Produce B.V. (Del Monte) to Trumpet Vine Investments, N.V. (Trumpet Vine). Trumpet Vine is a Netherlands Antilles corporation organized by Mexican investors for the purpose of acquiring Del Monte. Trumpet Vine's bid was supported by financing from Nacional Financiera, S.N.C. (NAFINSA), a state-owned economic development bank in Mexico. After the takeover bid was announced, Trumpet Vine filed a declaratory judgment action against Union Capital Partners I, Inc. (UCP) seeking adjudication that UCP was not entitled to monetary damages or injunctive relief arising out of the Del Monte

_____

[*]Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

acquisition. UCP filed counterclaims alleging breach of fiduciary duty, fraud, conspiracy to commit fraud and breach of an implied contract. The district court determined that New York law governed each issue and, applying that law, granted summary judgment in favor of Trumpet Vine, dismissing all the counterclaims. This judgment disposed of the litigation. We affirm.

## I. BACKGROUND

UCP, a Delaware corporation with its principal place of business in Florida, is a private investment corporation formed for the purpose of acquiring or investing in companies. Gregory Aziz founded and served as president of UCP. In late 1990 and early 1991, UCP began discussions to organize a deal to acquire Del Monte from its parent company, P.P.I. Holdings B.V. (PPI). PPI, in turn, is wholly owned by Polly Peck International P.L.C. (Polly Peck). Polly Peck entered bankruptcy in England in 1990. UCP characterized its role as that of a "deal sponsor," an individual who assembles a group of investors to purchase a company and takes all steps necessary to facilitate the transaction. UCP anticipated a role in the ownership and management of the newly acquired company as compensation for its efforts.

In August 1991, UCP, on behalf of its investor group, unsuccessfully submitted an unsolicited bid for Del Monte. UCP then attempted to aggregate another group of investors to acquire Del Monte. UCP's efforts intensified when the bankruptcy administrator announced in June of 1992 that Del Monte would be sold at a private auction conducted by Goldman Sachs.

UCP claims that in July of 1992, representatives of Trumpet

Vine and NAFINSA approached its president, Aziz, regarding their possible participation as equity partners in UCP's bid to acquire Del Monte. On July 8, 1992, Aziz met with agents of Trumpet Vine and NAFINSA at the New York offices of Kidder Peabody, which was serving as Aziz' financial advisor. According to Aziz, the NAFINSA representatives informed him that NAFINSA had attempted to independently enter the bidding process, but that Goldman Sachs had refused to provide them with financial information or allow them to enter the bidding.

According to UCP, the NAFINSA agents indicated that they wished to "join forces" with UCP in submitting a bid for Del Monte.[1] The agents requested that UCP share its confidential information regarding Del Monte and that they be invited to attend a due diligence presentation.[2] Aziz informed Polly Peck's bankruptcy administrator of the discussions with NAFINSA and subsequently scheduled a due diligence meeting at Del Monte's headquarters in Coral Gables, Florida on July 20, 1992. On July 17, UCP, NAFINSA and Del Monte entered into a nondisclosure agreement encompassing the disclosure to NAFINSA of confidential and proprietary information about Del Monte. In the agreement

---

[1]Trumpet Vine and NAFINSA contend that the July 8th meeting was an introductory meeting to merely explore the possibility of joint participation with UCP. They claim that NAFINSA always remained an independent investor throughout the process, and worked together with UCP so that both could get into the due diligence process. NAFINSA argues that they never negotiated, let alone agreed to, a joint venture, exclusive bidding or compensation arrangement with UCP.

[2]A "due diligence" presentation gives a prospective buyer up-to-the-moment financial information and the opportunity to question management and to examine the operations of the company on site.

NAFINSA promised to hold all "proprietary information" in confidence and to only disclose it to others "who need to know such Propriety Information for providing services to UCP." The agreement stated "UCP and [NAFINSA] intend to enter into discussions slating to possible acquisitions, equity investments, partnerships or joint venture operations involving [Del Monte]." However, the agreement also provided "[NAFINSA] makes no express or implied representation or warranty concerning the future acquisition, partnership or joint venture involving [Del Monte]." The agreement expressly provided for application of New York law.

After the due diligence meeting, UCP's potential financial backers, First Chicago and Kidder Peabody, decided to discontinue their involvement in the project. NAFINSA and the other Mexican investors then announced that they would go their own way and attempt an independent bid. UCP was unable to move forward and submit a bid by the bidding deadline. Trumpet Vine subsequently acquired Del Monte for approximately $500,000,000. NAFINSA supported the bid by Trumpet Vine and became an equity investor in Trumpet Vine for the Del Monte acquisition. UCP was not included in the acquisition of Del Monte and received no remuneration as a result of the transaction.

Trumpet Vine and NAFINSA initiated a declaratory judgment action stating they had a bona fide dispute with UCP and seeking an adjudication that UCP was not entitled to monetary damages or injunctive relief arising out of the acquisition of Del Monte. UCP asserted counterclaims of breach of implied contract, breach of fiduciary duty, fraud and conspiracy to commit fraud. Trumpet Vine

moved for summary judgment and dismissal of the counterclaims.

The matter was referred to a magistrate judge[3] who, on August 5, 1993, submitted a report recommending that New York law be applied to all the claims. The magistrate judge recommended granting summary judgment on the breach of fiduciary duty claim because of a lack of any showing that "this relationship was anything other than a conventional business or arm's length transaction." The report recommended granting summary judgment on the implied contract claims, determining the claims were barred by the statute of frauds. The magistrate judge, however, recommended denying the motion to dismiss the fraud claims because the pleadings were sufficient and alleged justifiable reliance. The district court adopted the report and recommendation in its entirety.

Trumpet Vine later moved for summary judgment on the remaining two fraud claims. In a report submitted on November 21, 1994, the magistrate judge recommended granting summary judgment against UCP on the fraud claims. The magistrate judge concluded that under New York law, UCP must show a specific injury other than loss of compensation. The magistrate judge determined that UCP had not established that but for NAFINSA's successful bid, UCP would have assembled a group of investors and acquired the company. Accordingly, UCP could not establish injury. The district court adopted the report and recommendation in its entirety.

II. DISCUSSION

---

[3]The Hon. Barry L. Garber, United States Magistrate Judge for the Southern District of Florida.

As a threshold issue, this court must decide whether the district court correctly applied New York law to UCP's substantive claims. We review conflict of laws issues de novo. *Fioretti v. Massachusetts Gen. Life Ins. Co.,* 53 F.3d 1228, 1234 (11th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 708, 133 L.Ed.2d 663 (1996). In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941). Under Florida law, a court makes a separate choice of law determination with respect to each particular issue under consideration. *See Department of Corrections v. McGhee,* 653 So.2d 1091, 1092-93 (Fla.Dist.Ct.App.1995), *aff'd,* 666 So.2d 140 (Fla.1996); *Colhoun v. Greyhound Lines, Inc.,* 265 So.2d 18, 21 (Fla.1972).

Once we have reviewed the determination of which state's law applies, we turn our attention to the district court's decision to grant summary judgment in favor of Trumpet Vine.

> Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On appeal, a district court's grant of summary judgment is entitled to *de novo* review, and "[w]e resolve all reasonable doubts about the facts in favor of the non-movant."

*Browning v. Peyton,* 918 F.2d 1516, 1519-20 (11th Cir.1990) (quoting *Tackitt v. Prudential Ins. Co. of Am.,* 758 F.2d 1572, 1574 (11th Cir.1985)).

## A. Breach of Fiduciary Duty

UCP argues that Trumpet Vine established a fiduciary

relationship with UCP through their mutual participation in pursuing the acquisition of Del Monte and the execution of a nondisclosure agreement. UCP claims that Trumpet Vine breached this fiduciary duty by acquiring Del Monte without any form of compensation to UCP.

## 1. Choice of Law

At least as to tort claims, the Florida Supreme Court has abandoned the traditional lex loci delicti[4] rule in favor of the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws § 145. *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla.1980). Section 145 provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[5]

---

[4]"The law of the place where the crime or wrong took place." Black's Law Dictionary 911 (6th ed. 1990).

[5]Restatement (Second) of Conflict of Laws § 6 provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

>> (a) the needs of the interstate and international systems,

>> (b) the relevant policies of the forum,

>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

>> (d) the protection of justified expectations,

>> (e) the basic policies underlying the particular

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

The district court determined that the conduct giving rise to UCP's injury, the alleged betrayal of UCP's confidences and the acquisition of Del Monte without any compensation to UCP, occurred primarily in New York. New York is where the parties' relationship was created and is the state whose law the parties chose to govern the nondisclosure agreement, the only formal agreement as to the relationship between the parties. Based upon these factors, the district court correctly determined that New York had the most significant relationship to the breach of fiduciary relationship claim.

UCP argues that Florida was the situs of UCP's injury and thus has the most significant relationship to this cause of action. UCP asserts that under Florida law, the place of injury is presumptively controlling. In support of this position, UCP relies

---

field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

primarily upon cases involving personal injury or products liability suits. *See State Farm Mut. Auto. Ins. Co. v. Olsen,* 406 So.2d 1109, 1111 (Fla.1981). The commentary to Restatement § 145 provides,

> the place of injury is of particular importance in the case of personal injuries and of injuries to tangible things.... On the other hand, the place of injury is less significant in the case of fraudulent misrepresentations ... and of such unfair competition as consists of false advertising and the misappropriation of trade values.

Restatement (Second) of Conflict of Laws § 145 comment f; *see also Default Proof Credit Card Sys., Inc. v. State Street Bank & Trust Co.,* 753 F.Supp. 1566, 1570-71 (S.D.Fla.1990). Because breach of fiduciary duty is more akin to a claim of fraud rather than a personal injury claim, we determine that the district court correctly balanced the competing factors in accordance with Florida law.[6]

## 2. Application of New York Law

Under New York law, a fiduciary duty exists when a person is under a duty to act or render advice for another's benefit. *Flickinger v. Harold C. Brown & Co.,* 947 F.2d 595, 599 (2d Cir.1991) (citing *Mandelblatt v. Devon Stores, Inc.,* 132 A.D.2d 162, 521 N.Y.S.2d 672, 676 (1987)); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,* 767 F.Supp. 1220, 1231 (S.D.N.Y.1991), *rev'd on other grounds,* 967 F.2d 742 (2d Cir.1992). The existence of a

---

[6]UCP argues that the district court failed to give sufficient weight to the fact that UCP's primary place of business is in Florida. We disagree. Application of the "domicile" factor implicates Florida, New York, Delaware, Mexico and the Netherlands Antilles. We also note that although UCP's president, Aziz, was himself located in Florida, the company had no offices or employees in the state.

fiduciary relationship is a question of fact. Accordingly, in order to survive a motion for summary judgment, UCP must present sufficient evidence to support a finding that a fiduciary relationship existed between UCP and Trumpet Vine. The district court determined that UCP made no showing that the relationship was anything other than a conventional business or arm's length transaction. We agree.

UCP argues that the record contains sufficient evidence to create a material issue of fact as to the existence of a fiduciary relationship. UCP asserts that it reposed trust and confidence in Trumpet Vine when it disclosed its proprietary information and arranged for Trumpet Vine's entry into the due diligence process. New York law provides, however, that " "a conventional business relationship, without more, does not become a fiduciary relationship by mere allegation.' " *Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.,* 785 F.Supp. 411, 426 (S.D.N.Y.1992) (quoting *Oursler v. Women's Interart Center, Inc.,* 170 A.D.2d 407, 566 N.Y.S.2d 295 (1991)). As a general matter, merely reposing confidential information in and of itself will not create a fiduciary relationship under New York law. *Litton Indus.,* 767 F.Supp. at 1231. The fiduciary relationship must inspire and provide the context for the disclosures. *Id.* at 1232; *United States v. Reed,* 601 F.Supp. 685, 715 (S.D.N.Y.), *rev'd in part on other grounds,* 773 F.2d 477 (2d Cir.1985). UCP has presented no evidence of any special relationship with Trumpet Vine or NAFINSA which inspired the disclosures. Rather, the record reveals that the parties were largely unknown to each other only a

short time prior to the due diligence meeting.

UCP relies heavily upon *Browning v. Peyton,* 918 F.2d 1516 (11th Cir.1990), where this court reversed summary judgment on a breach of fiduciary duty claim, determining that material issues of fact remained. Browning, a real estate investor and developer, reached an oral agreement to form a joint venture with Peyton for the purpose of bidding for a large group of real estate holdings. Browning alleged that Peyton later informed him that he was no longer interested in the real estate, causing Browning to abandon the project. Peyton subsequently submitted an independent bid and purchased the real estate. This court concluded that the record raised questions of fact as to whether a fiduciary relationship had been established between Browning and Peyton. *Id.* at 1522.

*Browning,* however, is distinguishable from the case before us. As an initial matter we note that *Browning* applied the law of Florida and not New York. Moreover, Browning alleged that the parties had in fact agreed to form a joint venture thus creating a special relationship between the parties. UCP has not asserted the existence of any such agreement between itself and Trumpet Vine or NAFINSA. UCP has failed to make any showing that its disclosures and assistance arose from any relationship between the parties other than a conventional business transaction.

UCP points to the existence of the nondisclosure agreement as proof of a confidential relationship. A fiduciary duty may arise out of a contractual relationship which is independent of the contract itself. *Davis v. Dime Sav. Bank of New York, FSB,* 158 A.D.2d 50, 557 N.Y.S.2d 775, 776 (1990). However, under the terms

of the nondisclosure agreement, NAFINSA had no obligation to enter into any kind of transaction with UCP, nor did it promise that it would not proceed independently in the future. The nondisclosure agreement expressly negates any obligation on the part of NAFINSA to participate with UCP in acquiring Del Monte.

## B. Fraud Claims

UCP alleges that it reasonably relied upon Trumpet Vine's representations that Trumpet Vine was interested in joining forces with UCP. UCP argues that Trumpet Vine never intended to enter into any partnership or equity investment with UCP but intended from the outset to utilize information supplied by and through UCP strictly for its own benefit.

## 1. Choice of Law

The Restatement (Second) of Conflict of Laws provides specific sections for particularized torts. Section 148 provides the choice of law principles for fraud and misrepresentation, and the parties agree that Florida courts would apply this section. The pertinent part of section 148 provides:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
>> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>>
>> (b) the place where the plaintiff received the representations,
>>
>> (c) the place where the defendant made the representations,
>>
>> (d) the domicil, residence, nationality, place of

incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

The district court found that the alleged misrepresentations primarily occurred at the July 8th meeting in New York. Although UCP contends that Trumpet Vine and NAFINSA subsequently repeated the misrepresentations, the district court concluded that those misrepresentations, if any, arose from the initial acts in New York. Thus the district court determined that New York was the location where Trumpet Vine made and UCP received the alleged misrepresentations.

The court found that some acts in reliance (the due diligence) occurred in Florida while others (the agreement to share information) occurred in New York. Thus neither state emerged as the place of reliance. Application of the fourth factor, the domicil, residence, nationality and place of business of the parties, implicated Florida, New York, Delaware, Mexico and the Netherlands Antilles. Finally, the district court determined that, although Del Monte was headquartered in Florida, the takeover itself was to be consummated in New York. We agree with the district court's determination that New York had the most significant contacts, as the place where the misrepresentations and the initial acts of reliance occurred.

## 2. Application of New York Law

To sustain a claim for fraud under New York law, UCP must

prove by clear and convincing evidence the existence of five elements: (1) a representation of material fact, (2) falsity of the statement, (3) scienter, (4) deception, and (5) injury or detrimental reliance. *Channel Master Corp. v. Aluminium Ltd. Sales, Inc.,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833, 835 (1958); *Lehman v. Dow Jones & Co.,* 783 F.2d 285, 295 (2d Cir.1986). Although the district court determined that UCP had established material issues concerning the first four elements, it concluded UCP failed to produce competent evidence sufficient to create a genuine issue of material fact as to injury.

Under New York law, the measure of damages for fraud is governed by the "out-of-pocket" rule which limits recovery to costs incurred in preparation or in performance or in passing up other business opportunities. *Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784, 793 n. 6 (2d Cir.1986); *Lehman,* 783 F.2d at 296. UCP did not assert that it incurred any additional expenses as a result of Trumpet Vine's representations or that it passed up opportunities with other investors. Moreover, the district court determined that UCP presented insufficient evidence to support a finding that UCP could have successfully participated in the acquisition of Del Monte absent Trumpet Vine's representations.

On appeal UCP does not assert that it suffered any actual injury. Rather, UCP argues that New York law permits the recovery of nominal damages for fraud in the absence of any actual injury/damages. In *Kronos, Inc. v. AVX Corp.,* 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993), the New York Court of Appeals

stated, "Nominal damages are always available in breach of contract actions, but they are allowed in tort only when needed to protect an "important technical right.' " *Id.* 595 N.Y.S.2d at 934, 612 N.E.2d at 292 (citation omitted). As an example of such an "important technical right", the court pointed to a landowner's right to be free of trespass. *Id.* The court stated that in that particular instance a departure from the actual injury rule is warranted because a continuing trespass may ripen into a prescriptive right and deprive a property owner of title. *Id.* The court held that an exception is not warranted for the tortious inducement of breach of contract, the claim presented in *Kronos.* The court continued,

> In tort, ... there is no enforceable right until there is loss. It is the incurring of damage that engenders a legally cognizable right. To recognize nominal damages element of tort claims would be to wrest the cause of action from its traditional purposes—the compensation of *losses*—and to use it to vindicate nonexistent or amorphous inchoate rights when unlike in trespass to property, there is no compelling reason to do so.

*Id.* 595 N.Y.S.2d at 935, 612 N.E.2d at 293. There is no similarly compelling reason to depart from the actual injury rule in this case. Accordingly, the district court correctly concluded that nominal damages were not appropriate absent a showing of injury. *See Dress Shirt Sales, Inc. v. Hotel Martinique Assocs.,* 12 N.Y.2d 339, 239 N.Y.S.2d 660, 662-64, 190 N.E.2d 10, 12 (1963); *Gordon v. Dino De Laurentiis Corp.,* 141 A.D.2d 435, 529 N.Y.S.2d 777, 779 (1988); *Lehman,* 783 F.2d at 296.

## C. The Implied Contract Claims

UCP raised two similar claims, breach of contract implied-in-fact (quantum meruit) and breach of contract

implied-in-law (unjust enrichment).[7] UCP argues that it provided Trumpet Vine with research, experience and confidential and proprietary information regarding Del Monte and arranged for Trumpet Vine's entry into the bidding process. UCP contends that Trumpet Vine requested and accepted the services and information and should compensate UCP for the benefits received.

## 1. Choice of Law

Florida has traditionally applied the lex loci contractus rule for choice of law determinations regarding issues of contract law. *Fioretti,* 53 F.3d at 1235; *Goodman v. Olsen,* 305 So.2d 753, 755 (Fla.1974), *cert. denied,* 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975); *Jemco, Inc. v. United Parcel Serv., Inc.,* 400 So.2d 499, 500-01 (Fla.Dist.Ct.App.1981), *rev. denied,* 412 So.2d 466 (Fla.1982). Under the lex loci contractus method issues concerning the validity and substantive obligations of contracts are governed by the law of the place where the contract is made. *Ray-Hof Agencies, Inc. v. Petersen,* 123 So.2d 251, 253 (Fla.1960); *Jemco,* 400 So.2d at 501. A contract is made where the last act necessary to complete the contract is performed. *Jemco,* 400 So.2d at 500.

While Florida has adopted the significant contacts approach of the Restatement (Second) of Conflict of Laws for tort actions, *see Bishop,* 389 So.2d at 1001, the Florida Supreme Court has continued to apply the traditional lex loci contractus approach for contract actions. In *Sturiano v. Brooks,* 523 So.2d 1126, 1129 (Fla.1988), the Florida Supreme Court expressly declined to adopt

---

[7]We treat these claims together because both would be barred if the New York statute of frauds is applicable.

the Restatement approach and applied the lex loci contractus rule. Although the Florida Supreme Court specifically limited its decision to contracts for automobile insurance, the Florida appellate courts have continued to apply the rule to other areas of contract law as well. *See In re Estate of Nicole Santos,* 648 So.2d 277 (Fla.Dist.Ct.App.1995) (validity of an antenuptial contract); *Stratford Fin. Corp. v. Security Pac. Nat. Bank,* 580 So.2d 806 (Fla.Dist.Ct.App.1991) (enforceability of a brokerage contract). Accordingly, we apply the lex loci contractus approach.[8]

UCP argues that the implied contract was "made" when UCP conferred and Trumpet Vine received the benefits, i.e. participation in the due diligence meeting and access to the proprietary information, which occurred in Florida. The district court, however, determined that the last necessary act in this cause of action was the acquisition of Del Monte which took place in New York. In *Stratford,* the Florida District Court of Appeal held an oral brokerage contract unenforceable under New York law. 580 So.2d at 806. Under the agreement, the brokerage commission was to be payable out of the proceeds of any closing. *Id.* The court of appeal determined that the closing was thus the last act necessary to complete the contract. *Id.* at 806-07. Similarly, UCP alleges that it should have received stock and a managerial role in return for its assistance. As in *Stratford,* compensation could not be awarded without a closing. As the site of the closing, New York

---

[8]"A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.,* 710 F.2d 678, 690 (11th Cir.1983).

law governs.[9]

## 2. Application of New York Law

The district court concluded that because there was no written compensation agreement between the parties, New York's statute of frauds barred the claims. New York's statute of frauds provides:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: ... (10) Is a contract to pay compensation for services rendered in negotiating a loan, ... or of a business opportunity,.... "Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law....

N.Y.Gen.Oblig.Law § 5-701(a)(10) (McKinney 1989).

UCP argues that the statute of frauds is inapplicable because UCP is not seeking a set monetary fee, but rather seeks an equity interest in the acquired company and a role in its management. The New York statute of frauds expressly includes contracts to pay "compensation" and is not limited to monetary fees. While UCP correctly notes that section 5-701(a)(10) does not extend to

---

[9]Although the final signatures were applied in a ceremonial signing in Mexico City, virtually all the closing activities, including payment of the purchase price, took place in New York, and none of the closing activities occurred in Florida. New York is thus best characterized as the situs of the closing. In any event, New York has a significant interest in the application of its statute of frauds. In *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 300 N.Y.S.2d 817, 825-28, 248 N.E.2d 576, 582-83 (1969), the New York Court of Appeals emphasized one of the important legislative purposes underlying this particular section of the statute of frauds: reducing the number of unfounded and multiple claims for commissions. The court found this purpose particularly compelling given New York's role as a "national and international center for the purchase and sale of businesses and interests therein." *Id.*

agreements between parties in a joint venture, *see Dura v. Walker, Hart & Co.,* 27 N.Y.2d 346, 318 N.Y.S.2d 289, 291-93, 267 N.E.2d 83, 85 (1971); *Natuzzi v. Rabady,* 177 A.D.2d 620, 576 N.Y.S.2d 326, 328 (1991), UCP has not alleged nor does the record support the existence of a joint venture between UCP and the defendants in this action. *See Natuzzi,* 576 N.Y.S.2d at 328; *Orderline Wholesale Dist., Inc. v. Gibbons, Green, van Amerongen, Ltd.,* 675 F.Supp. 122, 126 (S.D.N.Y.1987). UCP's complaint merely alleges, "it was implied that the services and information were given and received with the expectation that UCP would be compensated for them" and that UCP "conferred a substantial benefit on defendants for which UCP ought to be compensated." Accordingly UCP's implied contract claims are not beyond the scope of New York's statute of frauds. *See Orderline Wholesale Dist.,* 675 F.Supp. at 127-28.

UCP further argues that even if the statute of frauds applies, there are outstanding issues of fact surrounding the "part performance" exception to the statute which preclude granting summary judgment on this basis. The district court correctly rejected this argument. "[P]art performance may only be asserted to overcome the defense of the Statute of Frauds in an action for specific performance of the contract, and may not be raised, as here, in an action to recover damages...." *Papell v. Calogero,* 114 A.D.2d 403, 494 N.Y.S.2d 127, 129 (1985), *mod. on other grounds,* 68 N.Y.2d 705, 506 N.Y.S.2d 309, 497 N.E.2d 676 (1986); *see also Spodek v. Riskin,* 150 A.D.2d 358, 540 N.Y.S.2d 879, 881 (1989); *Mauala v. Milford Management Corp.,* 559 F.Supp. 1000, 1004 (S.D.N.Y.1983). In any event, under New York law, the doctrine of

part performance may be invoked only if the complaining party's actions can be characterized as "unequivocally referable" to the agreement alleged. *Anostario v. Vicinanzo,* 59 N.Y.2d 662, 463 N.Y.S.2d 409, 409-10, 450 N.E.2d 215, 216 (1983). The actions must be " 'unintelligible or at least extraordinary,' explainable only with reference to the oral agreement." *Id.; Burns v. McCormick,* 233 N.Y. 230, 135 N.E. 273 (1922). Here, the nondisclosure agreement between the parties provided that the parties "intend to enter into discussions slating to possible acquisitions...." The part performance exception does not apply when "the performance undertaken by plaintiff is also explainable as preparatory steps taken with a view toward consummation of an agreement in the future." *Anostario,* 463 N.Y.S.2d at 410, 450 N.E.2d at 216; *see also McDermott v. Town of Goshen,* 207 A.D.2d 612, 615 N.Y.S.2d 525, 527 (1994); *Ghura v. Islip Resource Recovery Agency,* 122 A.D.2d 106, 504 N.Y.S.2d 503, 504 (1986).

## III. CONCLUSION

For the reasons stated above, the district court's grant of summary judgment in favor of Trumpet Vine is AFFIRMED.