**THUNDERWAVE, INC., Plaintiff,**

v.

**CARNIVAL CORPORATION f/k/a Carnival Cruise Lines, Defendant.**

No. 96–2187–CIV.

United States District Court, S.D. Florida.

Jan. 23, 1997.

Philip L. O'Neill, John M. Craig, Keck, Mahin & Cate, Washington, DC, Steven J. Brodie, Cohen, Berke, Bernstein, Brodie & Kondell, P.A., Miami, FL, for Plaintiff.

Jeffrey T. Foreman, Michael Nachwalter, Miriam Lefkowitz, Kenny Nachwalter Seymour Arnold Critchlow & Spector, P.A., Miami, FL, for Defendant.

## MEMORANDUM OPINION

MORENO, District Judge.

Defendant Carnival Corporation ("Carnival") circulated a Request for Proposal to forty-two vendors inviting contract proposals for a Turnkey Shipboard In–Cabin Interactive/Multimedia System ("SIIMS"). Plaintiff ThunderWave, Inc. ("ThunderWave") responded to the Request, and claims that its proposal was ultimately accepted by Carnival. ThunderWave also contends that Carnival requested that ThunderWave perform certain Design Review services which fell outside of the contract proposal, with Carnival agreeing to pay on a "time, materials, and out-of-pocket expense" basis. In addition, ThunderWave argues that Carnival requested that ThunderWave take responsibility for Carnival's Infrastructure services, offering to pay on the same terms. ThunderWave claims that Carnival has refused to pay for this work, and seeks damages under two alternative theories of recovery: breach of express contract or unjust enrichment.

The Court notes that Carnival previously filed a Rule 12(b) Motion to Dismiss. *See ThunderWave, Inc. v. Carnival Corporation f/k/a Carnival Cruise Lines,* No. AW 96–481 (D.Md. March 18, 1996) (Defendants' Motion to Dismiss or, Alternatively, to Transfer Case). Consequently, Carnival cannot "make a motion based on the defense or objection so omitted, except a motion as provided in subdivision h(2)...." Fed.R.Civ.P. 12(g). Rule 12(h)(2) provides that "A defense of failure to state a claim upon which relief can be granted ... may be made ... by motion for judgment on the pleadings." Fed.R.Civ.P. 12(h)(2). *See also Daingerfield Island Protective Soc. v. Lujan,* 797 F.Supp. 25 (D.D.C. 1992), *aff'd,* 40 F.3d 442 (D.C.Cir.1994) (holding that the defense of failure to state a claim upon which relief can be granted is not waived by the failure to interpose it in a motion under Rule 12); *English v. Dyke,* 23 F.3d 1086, 1091 (6th Cir.1994) (noting that Rule 12 excepts motions for judgment on the pleadings from its waiver provisions). The Court will therefore treat Defendant's motion as a Rule 12(c) Motion for Judgment on the Pleadings.

## STANDARD OF REVIEW

Federal district courts have applied a "fairly restrictive standard in ruling on motions for judgment on the pleadings." *Bryan Ashley Int'l, Inc. v. Shelby Williams Indus., Inc.*, 932 F.Supp. 290, 291 (S.D.Fla.1996) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (1990)). To obtain a judgment on the pleadings, the moving party must clearly establish that no material issue of fact remains unresolved and that it is entitled to judgment as a matter of law. *Id.; Vagenas v. Continental Gin Co.*, 789 F.Supp. 1137, 1138 (M.D.Ala. 1992), *vacated on other grounds*, 988 F.2d 104 (11th Cir.1993), *cert. denied*, 510 U.S. 947, 114 S.Ct. 389, 126 L.Ed.2d 337 (1993); *Greenberg v. General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir.1973). Moreover, the district court must view the facts presented in the pleadings, and all inferences drawn thereof, in the light most favorable to the non-moving party. *Inst. for Scientific Info., Inc. v. Gordon and Breach*, 931 F.2d 1002, 1004 (3rd Cir.1991), *cert. denied*, 502 U.S. 909, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991). The standard of review for Rule 12(b)(6) and Rule 12(c) motions are identical. *See Bryan Ashley*, 932 F.Supp. at 291–92 (citations omitted); *Delta Truck & Tractor v. Navistar Intern. Transp.*, 833 F.Supp. 587 (W.D.La.1993) (applying the standard used for Rule 12(b)(6) motions to Rule 12(c) motions) (citations omitted).

## CHOICE OF LAW

■ The Maryland District Court ruled that "Florida is going to be applicable here ... under the appropriate choice of law...." *ThunderWave, Inc. v. Carnival Corporation f/k/a Carnival Cruise Lines*, No. AW 96–481 (D.Md. August 26, 1996) (Hearing Transcript). This prior ruling of the transferor court may only be reconsidered "when the governing law has been changed by a subsequent decision of a higher court, when new evidence becomes available, when a clear error has been committed, or to prevent manifest injustice." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991) (citations omitted), *cited with approval in Shute v. Carnival Cruise Lines,*

*Inc.*, 804 F.Supp. 1525, 1528 (S.D.Fla.1992). Since the governing law has not been changed by a higher court, no new evidence has become available, and Plaintiff has not presented any showing that a manifest injustice will occur under the application of Florida law, this Court need only consider whether the Maryland District Court committed a clear error.

Both Florida and Maryland apply the "lex loci contractus" rule for choice of law determinations regarding issues of contract law. *Fioretti v. Massachusetts General Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 708, 133 L.Ed.2d 663 (1996); *American Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 659 A.2d 1295, 1301 (1995). Consequently, application of the "lex loci contractus" rule determines whether Florida or Maryland law applies to ThunderWave's unjust enrichment claims. *See Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1119 (11th Cir.1996) (applying the lex loci contractus rule to an unjust enrichment claim). Under this rule, an implied-in-law contract is created where the last act necessary to complete the contract is made. *Id.* (citing *Jemco, Inc. v. United Parcel Serv., Inc.*, 400 So.2d 499, 500–01 (Fla. 3d DCA 1981), *rev. denied*, 412 So.2d 466 (Fla.1982)); *Mallinckrodt, Inc. v. Whittaker M.A. Bioproducts, Inc.*, 81 Md.App. 96, 566 A.2d 1113, 1116 (1989) (law governing oral contract is the law of the state where the agreement was reached).

Although Carnival argues in this motion that ThunderWave's implied-in-law contracts for Design Review services and Infrastructure services arose at the time of performance, a review of Carnival's Complaint indicates that performance followed Carnival's acceptance of ThunderWave's offers. *See* Complaint ¶ 38 (the parties "orally agreed" that "ThunderWave in cooperation with Carnival would perform a Design Review"); *Id.* ¶ 83 ("ThunderWave entered into an oral agreement with Defendant Carnival, whereby the parties agreed to engage ThunderWave to perform a Design Review ... [which] ... was to be in accordance with instructions submitted by Defendant Carni-

val"); [1] *Id.* ¶ 51 (Carnival's Vice President of Fleet Operations, Brendan Corrigan, stated to ThunderWave that the parties "must proceed as if the contract (for, among other things, Infrastructure services) is signed"); *Id.* ¶ 95 (the parties "entered into an oral agreement" in Miami "whereby the parties agreed to engage ThunderWave to perform Infrastructure consulting services ... [which] ... was to be in accordance with the instructions submitted by Defendant Carnival"); [2] *Id.* ¶ 98 ("In compliance with the parties' agreement and understanding, ThunderWave began performance of the work ... and completed all tasks assigned to it"). Based on Carnival's own pleadings, and in the absence of any evidence or argument by Carnival that the alleged contracts for Design Review services or Infrastructure services were unilateral contracts, this Court can find no clear error in the Maryland District Court's determination that the contract was entered into in Miami and that Florida law applies to the unjust enrichment claims.

 Regarding the tort actions, a case transferred under Section 1404(a) is governed by the same choice of law principles that would have applied had there been no transfer. *Ferens v. John Deere Co.,* 494 U.S. 516, 531, 110 S.Ct. 1274, 1283–84, 108 L.Ed.2d 443 (1990). Thus, while the Florida Supreme Court has adopted the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws § 145, *see Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla.1980); *Trumpet Vine,* 92 F.3d at 1115–16; *Judge v. American Motors Corp.,* 908 F.2d 1565, 1568 (11th Cir. 1990), Maryland adheres to the traditional "lex loci delicti" conflict of laws principle for issues of tort law. *See, e.g., Chambco v. Urban Masonry Corp.,* 338 Md. 417, 659 A.2d 297, 299 (1995); *Ward v. Nationwide Mutual Automobile Ins. Co.,* 328 Md. 240, 614 A.2d 85, 91 n. 8 (1992); *Black v. Leatherwood Motor Coach Corp.,* 92 Md.App. 27, 606 A.2d 295, 300, *cert. denied,* 327 Md. 626, 612 A.2d 257 (1992).

Under the doctrine of "lex loci delicti," Maryland applies the substantive tort law of the place where the tort occurred. *See Hauch v. Connor,* 295 Md. 120, 453 A.2d 1207, 1209–1212 (1983). "[T]he law of the place of the tort ... is the place where the injury or death was inflicted and not the place where the allegedly wrongful act or omission took place." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 511 (4th Cir.1986). Since in a tort action a corporation always suffers abstract financial injury at its primary place of business, the applicable law is not necessarily the corporation's primary place of business, but is rather where the injury was actually inflicted. *See First Federal Savings and Loan Ass'n of Brainerd v. Equitable Bank,* 1988 WL 167703 at *4 (D.Md. April 5, 1988) (unpublished opinion).

Counts VIII and IX of the Complaint (the tort claims) are based on certain alleged wrongful conduct of Perez and Carnival, all of which occurred in Florida. Judge Williams of the District Court of Maryland, Southern Division, concluded that "there is one overall basic argument here that is centered around actions and acts which were performed in Miami." *ThunderWave, Inc. v. Carnival Corporation f/k/a Carnival Cruise Lines,* No. AW 96–481 (D.Md. August 26, 1996) (Hearing Transcript). ThunderWave has not presented any argument in its Opposition to Defendant's Motion to Dismiss which would indicate that the injury was inflicted in Maryland, and ThunderWave did not present any argument, other than a bland statement that "ThunderWave was actually injured" in Maryland, in its Opposition to Defendant's Motions to Transfer and Dismiss, *see ThunderWave, Inc. v. Carnival Corporation f/k/a Carnival Cruise Lines,* No. AW 96–481 (D.Md. April 1, 1996) (Opposition to Defendants' Motions to Dismiss and Transfer). Based upon the arguments presented, this Court can find no clear error with the conclusion reached by Judge Williams, and will apply Florida law to the tort claims.

### COUNTS IV AND VI (UNJUST ENRICHMENT)

 Under Florida law, a party may simultaneously allege the existence of an oral

---

1. This oral agreement was entered into in Miami. *See* Complaint ¶ 38.

2. This oral agreement was entered into in Miami. *See* Complaint ¶ 51.

contract and seek equitable relief under the theory of unjust enrichment. As stated by the Florida Supreme Court:

> it has become quite customary, in an abundance of caution, to join the common counts [i.e., unjust enrichment] with the special count which declares on the express contract, so that, if for any reason the plaintiff fails in his proof of the express contract, he may have an opportunity to at least recover the value of the work actually done or the materials actually furnished, or so much thereof as have not been paid for, upon an implied contract.

*Hazen v. Cobb–Vaughan Motor Co.,* 96 Fla. 151, 117 So. 853 (1928). However, upon a showing that an express contract exists, the quasi-contract claim fails. *See Garcia v. Cosicher,* 504 So.2d 462, 463 n. 2 (Fla. 3d DCA), *rev. denied,* 513 So.2d 1060 (Fla.1987) (no quantum meruit recovery justified in view of the express contract); *Bowleg v. Bowe,* 502 So.2d 71, 72 (Fla. 3d DCA 1987) (unjust enrichment claim fails where a valid final contract exists); *Liza Danielle, Inc. v. Jamko, Inc.,* 408 So.2d 735, 738 (Fla. 3d DCA 1982) (equitable remedies are only precluded where the remedy at law is "plain, certain, prompt, speedy, sufficient, complete, practical, and efficient in attaining the ends of justice") (quoting 29 Fla.Jur.2d, Injunctions § 18); *Solutec Corp. v. Young & Lawrence Associates, Inc.,* 243 So.2d 605, 606 (Fla. 4th DCA 1971) (conclusive proof of a valid express contract precludes suit for quantum meruit, since "the law will not imply a contract where a *valid express contract* exists") (emphasis added).

The Court recognizes that there is support for a contrary conclusion. *See Gary v. D. Agustini & Asociados, S.A.,* 865 F.Supp. 818, 827 (S.D.Fla.1994) (dismissing a claim for unjust enrichment because the Plaintiff had what the Court found to be an adequate contractual remedy—restitution); *Poe v. Estate of Levy,* 411 So.2d 253, 256 (Fla. 4th DCA 1982) ("allegations of an express agreement preclude, in the same count, a claim for quantum meruit"); *Tobin & Tobin Ins. Agency v. Zeskind,* 315 So.2d 518, 520 (Fla. 3d DCA 1975) ("As a general rule, an action seeking to enforce an express contract and also attempting to disavow the existence of the express contract and accomplish the same purpose under quantum meruit is not available"). However, the Court remains persuaded by *Hazen,* and concludes that because Defendant denies the existence of an express contract, the Plaintiff has properly presented the claim for unjust enrichment.

■ The Court also agrees with Plaintiff that the economic loss doctrine does not apply to claims for unjust enrichment, and is unpersuaded by the contrary conclusion reached in *Anthony Distributors, Inc. v. Miller Brewing Co.,* 904 F.Supp. 1363, 1368 (M.D.Fla.1995) (applying the economic loss rule to a claim for unjust enrichment). The economic loss doctrine bars a plaintiff's recovery of purely economic damages under a *tort* theory, and a claim for unjust enrichment sounds in quasi-contract, not tort.

■ The Court also agrees with Plaintiff that the Federal Rules of Civil Procedure govern the manner of pleading in this diversity case, *see Airlines Reporting Corp. v. Atlantic Travel Service, Inc.,* 841 F.Supp. 1166, 1167 (S.D.Fla.1993), and that under Federal Rule of Civil Procedure 8(e)(2) .a party may set forth inconsistent or alternative claims in a single complaint. Because Plaintiff's inconsistent or alternative theories are available under the substantive state law, they are permitted under the Federal Rules.

## (COUNT IX) TORTIOUS INTERFERENCE WITH ADVANTAGEOUS PROSPECTIVE BUSINESS RELATIONS

■ Under Florida law, "an action for tortious interference with business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 812–13 (Fla.1994) (denying a claim for tortious interference with business relationship where Appellee "had no identifiable agreement with its past customers that they would return" for future business). In approving *Ethan Allen,* the Florida Supreme Court recently adopted a lower court determination that in order to state a claim for tortious interference, a

Plaintiff must "prove a business relationship with an identifiable person." *Ferguson Transp., Inc. v. North American Van Lines, Inc.*, 687 So.2d 821, 822 (Fla.1996).

In support of its claim, ThunderWave alleges that Carnival knew and believed that ThunderWave's performance of the contracts would allow ThunderWave to attract significant business and possibly go public.[3] ThunderWave also contends that there existed a highly potential business relationship between ThunderWave and third parties which would have been completed absent Carnival's interference. However, despite these general allegations, ThunderWave has not alleged any identifiable agreement with any identifiable customer. Although the parties may have originally contemplated future licensing and sales orders from other companies, hopeful projections, absent an identifiable agreement, do not satisfy the standard enunciated in *Ethan Allen* and *Ferguson*.

## COUNT VIII (FRAUDULENT OR NEGLIGENT MISREPRESENTATIONS)

■ According to Carnival, the economic loss doctrine prevents ThunderWave from stating a claim for fraudulent or negligent misrepresentations. *See Colonial Penn Ins. Co. v. Value Rent–A–Car, Inc.*, 814 F.Supp. 1084, 1100 (S.D.Fla.1992). Carnival also contends that a breach of contract cannot be converted into a tort merely by allegations of malice. *Id.* at 1100. Noting that ThunderWave must allege an injury to person or property to sustain a claim for fraudulent or negligent misrepresentations, Carnival argues that injury to "person" means personal injury, *see AFM Corp. v. Southern Bell Tel. & Tel. Co.*, 515 So.2d 180, 180–81 (Fla.1987); *Reyher v. Equitable Life Assur. Soc. of United States*, 900 F.Supp. 428, 432 (M.D.Fla. 1995), and that "injury to property" means physical property damage, *see Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 510

So.2d 899, 900 (Fla.1987); *Hoseline, Inc. v. U.S.A. Diversified Products, Inc.*, 40 F.3d 1198 (11th Cir.1994), *reh'g denied*, 49 F.3d 734 (11th Cir.1995). According to Carnival, ThunderWave has suffered neither personal injury nor property damage. Carnival points out that ThunderWave incorporated each of the allegations supporting its contract claim into its tort claims, and argues that, at best, the facts underlying the tort and contract claims are interwoven. Therefore, Carnival concludes, the economic loss rule bars the tort claims. *See Serina v. Albertson's, Inc.*, 744 F.Supp. 1113, 1118 (M.D.Fla.1990).

ThunderWave argues that the tort remedy is available because the breach of contract is attended by some additional conduct amounting to an independent tort. *See AFM Corp.*, 515 So.2d at 181–82 ("without some conduct resulting in personal injury or property damage, there can be no independent tort flowing from a contractual breach which would justify a tort claim solely for economic losses"). ThunderWave alleges that a senior Carnival official (Perez) intentionally or negligently made a series of false factual statements which induced ThunderWave to continue to devote itself exclusively and without compensation to the project, to consent to modifications to pre-existing agreements on terms more favorable to Carnival, and to incur additional expenses that would not otherwise have been incurred. According to ThunderWave, Carnival is not alleged to have been obligated by *contract* to disclose truthfully whether ThunderWave would be the sole contractor, whether Carnival was close to a deal with another contractor, whether instructions were issued to Carnival officials to stop work, or whether SeaVision (a competitor) would install the first system for free. Thus, ThunderWave argues, the tort claim is independent of the contract claim, *see Greenberg v. Mount Sinai Medical Center of Greater Miami, Inc.*, 629 So.2d 252, 255 (Fla. 3d DCA 1993), and caused injury to property

**3.** According to ThunderWave, Carnival demanded, as a precondition to the global contract, that ThunderWave issue to Carnival warrants for an equity stake in ThunderWave. ThunderWave also contends that Carnival demanded Thunder-Wave pay Carnival 25 percent of all revenue derived by ThunderWave from licensing of the software to other customers. Finally, Thunder-Wave alleges that both they and Carnival anticipated that the system would be marketed and sold to numerous other companies, leading to many repeat orders, and that ThunderWave would make lucrative sales of the system to identifiable third-party customers.

in the following ways: 1) damage to ThunderWave's goodwill and business representation; 2) erosion of the lead ThunderWave enjoyed over market rivals in product development; and 3) loss in enterprise value (capital value) due to the lost revenue, profits, goodwill, and technology lead.

In *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238 (Fla.1996), the Florida Supreme Court recently clarified the scope of the economic loss rule as is relates to allegations of fraud: [4]

> The distinction between fraud in the inducement and other kinds of fraud is the same as the distinction drawn by a New Jersey federal district court between fraud extraneous to the contract and fraud interwoven with the breach of contract. With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.

*Id.* at 1240 (adopting and quoting *Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.*, 209 Mich.App. 365, 532 N.W.2d 541 (1995)). Here, ThunderWave does not raise allegations of fraudulent inducement. Therefore, under *HTP*, the alleged fraud is fraud "interwoven with the breach of contract" and is barred by the economic loss rule.

### CONCLUSION

Therefore, it is,

ADJUDGED that Defendant's Motion to Dismiss is GRANTED in part. The Court GRANTS Defendant's Motion to Dismiss Count IX (Tortious Interference with Prospective or Advantageous Business Relations) and Count VIII (Fraudulent or Negligent Misrepresentations), but DENIES Defendant's Motion to Dismiss Counts IV and VI (Unjust Enrichment).

---

**4.** The Court notes that this case was decided after the parties filed their briefs.